## 52063. HORNSBY v. THE STATE.

QUILLIAN, Judge.

Defendant appeals his conviction for the offense of simple battery and terroristic threats and acts. His girl friend advised him that she had been assaulted by one Gus Robinson. The defendant spoke with Robinson, over the telephone, about the incident. According to the defendant, Robinson threatened him. Later that evening, at an establishment known as the Rock Garden, the defendant was sitting at the bar having a drink. Robinson entered, accompanied by David Rainey. Robinson walked over to the defendant and asked him "if he wanted any trouble." The defendant said, "no, I don't want any trouble." Robinson and Rainey sat down but were then asked by the manager of the club to leave the premises as "we don't want any trouble." Robinson and Rainey left and went across the street to a cafe. The defendant was outside standing by his car. Rainey pulled off his coat and

went back across the street "to talk to [the defendant] and see if we could get it settled and maybe we could go back into the place." During the ensuing conversation, Rainey said "if I touched him it was like a hand on his shoulder or something of this manner." The defendant then struck Rainey on the side of the face with his fist, and according to Rainey, "there was a gun which Mr. Hornsby pulled on me close and as within two to four feet." Rainey gave slightly different versions of what the defendant said. The first time, Rainey testified defendant said "if you don't get out of here, I'll blow your head off, and this type of thing." The second version of what defendant said was, "I'll blow your brains out. I'll kill you, if you don't get out of here as fast as you can." On cross examination, Rainey admitted that he and Robinson had bought "two six-packs" of beer, but did not remember how many they drank. Rainey then stated defendant's "exact words were, 'I'll shoot you.' " Later, Mr. Rainey said the words were "I'll blow your head off. You better get across the street." Although one act immediately followed the other, Rainey stated that "[i]t was two separate events."

Defendant's version of the events that evening was that when Robinson saw him in the Rock Garden he elbowed him in the side twice and used opprobrious words toward him. After he left the Rock Garden, Rainey came up to him and "stuck his hand on my shoulder four times" and also used opprobrious words. Defendant stated that the fourth time Rainey put his hand on him it "was in my face, on my nose . . . I hit him, one time." Defendant denied that he had made any threats and stated that he did not brandish or own a gun. He has appealed his conviction to this court. *Held:*

1. Enumerated as error is the averment of defendant that the crime of terroristic threats merged into the overt act of assault committed by the defendant. We do not agree. In *Zilinmon v. State,* 234 Ga. 535, 538 (216 SE2d 830), our Supreme Court held that "[t]he statute making illegal threats for the purpose of terrorizing another, does not include situations *where overt acts are done to carry out the threat.* Once an overt act is done, a violation of some other statute occurs . . . The defendant having been convicted of aggravated

assault with intent to murder, the count of the indictment charging the terroristic threats merged into this conviction. . ." Citing *State v. Estevez,* 232 Ga. 316, 320 (206 SE2d 475). (Emphasis supplied.) *Zilinmon* is not applicable. There the threat occurred and then merged into the following assault with intent to murder. In the instant case, the assault occurred first and was terminated before the terroristic threat occurred. The completed assault did not merge into the following threat. The victim was clear and unequivocal on this point. He stated these acts were "two separate events." Each offense involved proof of different essential elements and were clearly separate offenses. *Thomas v. State,* 128 Ga. App. 538, 541 (2) (197 SE2d 452).

2. The crime of terroristic threats, as defined by Code Ann. § 26-1307 (Ga. L. 1968, pp. 1249, 1281), requires corroboration of the testimony of the victim. Defendant alleges that the victim's testimony was not corroborated because it was incapable of corroboration as he had given so many different versions of what transpired. We do not agree. Two prosecution witnesses confirmed the fact that the defendant possessed a pistol when he confronted the victim. We can visualize that a person of ordinary comprehension might encounter difficulty remembering the exact words uttered by an angry assailant while viewing a pistol barrel from the open end. The sum and substance of his testimony was that the victim could be shot and killed if he did not remove himself from the vicinity. One state witness corroborated the victim's version by testifying that the defendant said, "I'll shoot you and kill you." We find this sufficient corroboration of a terroristic threat.

The possible issue of "conditional threat" was not raised, nor will we discuss it.

3. There was a conflict in the testimony of the state's witnesses, Rainey, McKay, and Daniel, with that of the defense witnesses, Dumas and the defendant. On cross examination of Dumas, the district attorney asked: "Q. You've known Tony McKay for some time. . . A. I haven't been around him but I've known his parents. . . Q. They're good folks? A. They are. Q. You think they would raise somebody to come in here and get on the

stand and make something up? A. I don't know... Q. . . how about Steve Daniel, do you know him? A. . . I just know him." The defendant objected on the grounds that "[t]here's been no impeachment per se of their testimony." The trial court overruled the objection on the basis that the district attorney was on cross examination and he was "entitled to a sifting and thorough examination."

The district attorney continued: "Q. You know his daddy? A. No sir, I do not... . Q. Mr. A. E. Daniel. A. No sir, I do not. Q. You have heard, never heard of him? A. I have heard [of] the A. E. Daniel because he was Justice of the Peace here. Q. The former Small Claims Court Judge, Danny Daniel. . . A. No Sir. . . Q. But you're saying you don't know whether his family would raise him and tell him to come in here and make a story up or you don't know anything about that at all? A. No sir."

This testimony was brought together in the district attorney's closing argument when he said: "[i]f you believe . . . the Defendant, and Leon Dumas. . . you can find him not guilty . . . If . . . you believe the testimony of David Rainey, Tony McKay and Steve Daniel . . . then you must . . . find the Defendant guilty. . . It's a simple question of credibility. . . Both [McKay and Daniel are] local boys . . . from good families. . . You may know . . . Steve Daniel . . . I've known his brother Danny Daniel, a lawyer for nineteen years. . . I've known his parents. They've served on juries here. I've never struck them... I don't believe that they're the kind of people who would rear a boy to come in here and lie to make a story. . . They're just not that kind of folks. . . I know that the work, that Mr. and Mrs. Daniel did on their oldest son, Danny, hadn't been forgotten . . . because I still have dealings with him as a lawyer now."

The closing argument was an extension of the remarks admitted over objection of defendant. The testimony offered could have relevancy only as showing good character of the state's witnesses. *Smith v. State,* 147 Ga. 689, 694 (95 SE 281). The general rule is well settled "that evidence of the good reputation of a witness for truth and veracity is inadmissible for the purpose of supporting, or, as it is frequently stated, of 'bolstering up'

his testimony, unless he has been impeached or his character assailed." Anno. 15 ALR 1066 and cits.; *Hamilton v. Conyers,* 28 Ga. 276 (4); *Vernon v. State,* 49 Ga. App. 187, 191 (174 SE 548).

In a similar vein, "evidence of the wealth or worldly circumstances of a party is never admissible, except in cases where position or wealth is necessarily involved." *Smith v. Satilla Pecan Orchard &c. Co.,* 152 Ga. 538 (3) (110 SE 303); *Northwestern Univ. v. Crisp,* 211 Ga. 636; 641 (88 SE2d 26). While all parties are entitled to a "thorough and sifting" cross examination (Code § 38-1705), this right is not unlimited. *White v. State,* 74 Ga. App. 634, 636 (40 SE2d 782). The scope of cross examination rests largely within the discretion of the trial judge and his ruling will not be disturbed unless such discretion be abused. *Moore v. State,* 221 Ga. 636, 639 (146 SE2d 895). This right must be "tempered and restricted so as not to infringe on privilege areas or wander into the realm of irrelevant testimony." *Eades v. State,* 232 Ga. 735, 737 (208 SE2d 791). The relevancy of these questions is not apparent. *Young v. State,* 232 Ga. 285, 288 (206 SE2d 439). Accord, *Smith v. State,* 147 Ga. 689, 694 (95 SE 281). A mere conflict between the testimony of one witness with that of other witnesses will not authorize admission of evidence to sustain the credibility of a witness. *Anderson v. Southern R. Co.,* 107 Ga. 500 (1) (33 SE 644); *Vernon v. State,* 49 Ga. App. 187, 191, supra; *Holland v. State,* 17 Ga. App. 311 (2) (86 SE 739). Although evidence of collateral matters may shed some remote light on the main issues, it is nevertheless necessary that the trial judge restrict such evidence to that which is material and relevant. *Childers v. State,* 130 Ga. App. 555, 562 (203 SE2d 874); *Head v. John Deere Plow Co.,* 71 Ga. App. 276 (1) (30 SE2d 662).

Bolstering of a witness whose testimony has not been impeached or his character assailed being impermissible, a fortiori the same party may not bolster his witness through the guise of cross examination of the other party's witness. And in this instance the error was compounded because it was the attorney who was doing the major portion of the testifying. The defense witness did not know the parents of the state's witness Daniel,

but the bolstering evidence was supplied in the question.

We agree, in part, with the summation of the district attorney. "It's a simple question of credibility. . ." If the jury believed the defense witnesses they should have acquitted the defendant. If they believed the state's witnesses they should have convicted the defendant. The improper bolstering of the state's witnesses could have tipped the scales in favor of the state. It was an abuse of discretion of the trial judge to permit the district attorney to bolster a state's witness under the guise of a "sifting and thorough" cross examination, where the state's witness has not been impeached or his character assailed. See Anno. 15 ALR 1075.

Although the defense did not object to the original questions bolstering the witness McKay, the questions immediately following regarding the witness Daniel were objected to: "Your Honor, I object to this line of questions. The State has presented Mr. Daniel and Mr. McKay. There's been no impeachment per se of their testimony. He built them up to a foundation regarding their past. I don't think it's proper and it's irrelevant questioning a person regarding this matter. The Court: Overrule the objection. The witness is on cross-examination. The District Attorney is entitled to a sifting and thorough examination. Go ahead, Mr. Lee." We find this objection sufficient to preserve for appeal the issue as to the bolstering of both witnesses. If the objection had been sustained, a motion to strike the earlier answers would have been a necessary concomitant. And, as the closing argument of the district attorney was but a repetition and extension of the evidence objected to it has been considered in assessing the impact of the inadmissible bolstering evidence.

Since the evidence of guilt did not demand a verdict of guilty and the key issue was the credibility of the witnesses, we find the error to be prejudicial.

4. The remaining enumerations of error do not require discussion as they are without merit, mooted by this decision, or are not likely to recur at a new trial.

*Judgment reversed. Deen, P. J., and Webb, J., concur.*

SUBMITTED APRIL 13, 1976 — DECIDED JUNE 11, 1976 —

*Gordon & Newman, Ken Gordon, Joseph D. Newman,* for appellant.

*William F. Lee, Jr., District Attorney,* for appellee.