41277. BALDWIN v. THE STATE.
(325 SE2d 128)

MARSHALL, Presiding Justice.

In this case, the appellant, Mark Anthony Baldwin, was convicted of two homicide offenses arising from his killing of Hazel Elizabeth Baldwin and Jack Russell Gober. He was found by the jury to be guilty but mentally ill. He was sentenced by the trial judge to two consecutive sentences of life imprisonment. OCGA § 17-7-131 (b) (4) et seq. He now appeals. We affirm.

These are, in material part, the facts: The appellant and the victim, Hazel Baldwin, had been married for approximately six years, and they had one child. The appellant suffered from mental problems, and there were recurrent separations and reconciliations between him and his wife. However, in August of 1983, she left him and filed for divorce. She obtained employment with a fast-food restaurant, Dunkin' Donuts, located on Buford Highway in Atlanta.

On September 20, 1983, the appellant took an overdose of drugs in an apparent suicide attempt. He was admitted to Shallowford Hospital, and a physician's certificate of involuntary commitment of the appellant as a mentally ill person was executed by the attending physician in the emergency room. OCGA § 37-3-42. However, the appellant was transferred that night to a hospital in Duluth and the following day he was released for transport to Northside Hospital's mental health facility. However, he was refused admission at Northside, because he did not have health insurance.

On September 21, the appellant took his mother's automobile to the Dunkin' Donut shop where his wife was employed. DeKalb County Battalion Fire Chief Jack Gober was sitting in the restaurant with a co-employee. When Hazel Baldwin recognized the appellant, she indicated that she was aware that he intended to do her harm, and she bent down behind the counter. The appellant removed a silver-plated revolver from his coat, leaned across the counter, and fired one shot into her head thereby killing her. Mr. Gober arose from his seat, began to approach the appellant, and asked what was happening. The appellant then fired a shot at Mr. Gober, hitting him in the chest and killing him. Other customers in the shop observed all of this, and testimony of various of these witnesses was admitted at trial.

While he was attempting to return to his mother's residence, the automobile that the appellant was driving became mired in a ditch. The appellant walked part of the remainder of the way to his house, but before reaching the house he was given a ride by other family members. The appellant was subsequently admitted to the Georgia Mental Health Institute.

At the Georgia Mental Health Institute, appellant's mother gave county police her consent to search her car. A .357 calibre revolver was recovered from under the rear seat. From forensics testimony, it was established at trial that this was the weapon used to kill the victims.

The appellant was arrested at the Georgia Mental Health Institute. He was given his Miranda warnings and placed in custody. He then made out-of-court statements to the police to the following effect: He told them the location of the murder weapon in his mother's car; he told them that he had shot the fire chief because he, the fire

chief, charged at him; and he stated that he shot his wife, because they had problems which he, the officer, would not understand.

A Jackson v. Denno hearing was conducted outside of the presence of the jury at trial for the purpose of determining the admissibility of these out-of-court statements. The trial judge ruled that the out-of-court statements were generally inadmissible, because they were made when the appellant was insane. In so ruling, the trial judge indicated that he felt bound by such cases as Blackburn v. Alabama, 361 U. S. 199 (80 SC 274, 4 LE2d 242) (1960) and *Kimbell v. State,* 252 Ga. 65 (1) (311 SE2d 465) (1984). However, the judge went on to rule that these statements could be admitted for the sole purpose of showing the appellant's state of mind at the time of the shootings.

Other evidence will be discussed to the extent necessary to resolve the enumerations of error raised.

1. In the first enumeration of error, the appellant argues that the trial court erred in admitting his out-of-court statements for the limited purpose of showing his state of mind at the time these statements were made.

It is true that Blackburn v. Alabama, 361 U. S. 199, supra, p. 207, holds that, "a most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane; . . ." (However, Blackburn recognizes that even an insane person can give a voluntary confession during a period of competence. Accord *Kimbell v. State,* supra.)

Here, the appellant filed a plea of insanity, thereby admitting commission of the physical acts constituting the offenses, but denying that he had the mental capacity to form the requisite *mens rea* for commission of the offenses themselves. Under these circumstances, we hold that the statements were properly admitted for the limited purpose of showing the appellant's state of mind. Accord *Henderson v. State,* 157 Ga. App. 621 (2) (278 SE2d 164) (1981).

And, given the remaining evidence against the appellant, it cannot be said that any incarceration of him will be based on the complained-of out-of-court statements. This is another way of saying that the remaining evidence was so strong that the admission of the appellant's out-of-court statements, even if error, was harmless under the facts of this case. Cf. Payne v. Arkansas, 356 U. S. 560, 567, 568 (78 SC 844, 2 LE2d 975) (1958).

2. It cannot be said that the trial judge erred in denying the appellant's motion for directed verdict of acquittal by reason of insanity. See *Sims v. State,* 242 Ga. 256 (248 SE2d 651) (1978); *Jackson v. State,* 166 Ga. App. 477 (304 SE2d 560) (1983). See also *Butler v. State,* 252 Ga. 135 (311 SE2d 473) (1984).

3. The trial judge did not err in furnishing the state with a copy of a psychiatric report concerning the appellant, which report was

prepared at Central State Hospital under court order. *Pierce v. State*, 243 Ga. 454 (254 SE2d 838) (1979).

4. The appellant's motion to suppress the fruits of the search of his mother's car was correctly denied. *Rucker v. State*, 250 Ga. 371 (11) (297 SE2d 481) (1982); Watts v. Indiana, 338 U. S. 49, 50 (69 SC 1347, 93 LE 1801) (1949).

5. The trial judge did not err in denying the appellant's motion for a preliminary hearing notwithstanding the indictment. *State v. Middlebrooks*, 236 Ga. 52 (222 SE2d 343) (1976).

6. It cannot be said that the trial judge abused his discretion merely by consulting with other judges concerning questions of law to be resolved in this case. Code of Judicial Conduct, Canon 3A (4). 251 Ga. 898.

7. The trial judge did not err in admitting the crime-scene photographs of the victim. Cf. *Brown v. State*, 250 Ga. 862 (5) (302 SE2d 347) (1983) with *Lamb v. State*, 241 Ga. 10 (2) (243 SE2d 59) (1978).

8. The trial judge did not abuse his discretion in imposing consecutive life sentences on the appellant. *Hoerner v. State*, 246 Ga. 374 (2) (271 SE2d 458) (1980); OCGA § 17-7-131 (g).

9. Nor can we say that the trial judge abused his discretion in denying the appellant's motion for mistrial based upon improper influences upon, and improper misconduct of, various of the jurors.

Here, it was reported that some of the jurors, while the trial of the appellant's case was recessed, had attended final arguments in another criminal trial in which the insanity defense was pleaded. The trial judge denied the motion for mistrial, after polling the jurors and determining that they had not been improperly influenced so as to affect their verdict in this case. In making this determination, we cannot say that the trial judge erred.

10. The trial judge's charge to the jury on circumstantial evidence was correct. See, e.g., *Stevens v. State*, 247 Ga. 698 (8) (278 SE2d 398) (1981).

11. The trial court did not err in denying the appellant's motion for mistrial based on the state's failure to comply with OCGA § 17-7-210. This Code section provides that upon proper request at least ten days prior to trial a defendant shall be provided with all in-custody statements made by him, and any such statements not provided cannot be used against him at trial. *Wallin v. State*, 248 Ga. 29 (5) (279 SE2d 687) (1981). However, from a review of the transcript, it appears that there was no violation of this Code section here.

12. Any remaining enumerated errors have been examined and found to be without merit.

*Judgment affirmed. All the Justices concur, except Hill, C. J., who dissents from Divisions 1 and 2 and the judgment, and Smith, J., who concurs in the judgment only.*

DECIDED JANUARY 7, 1985 —
REHEARING DENIED JANUARY 25, 1985.

*Michael S. Webb, Stephen M. Kiser,* for appellant.

*Robert E. Wilson, District Attorney, Barbara B. Conroy, Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis,* for appellee.

HILL, Chief Justice, dissenting.

I dissent to Divisions 1 and 2 and the judgment. The expert testimony of Drs. Katalin Ertavy, Jerold Lower and Timothy Bullard established that the defendant was legally insane at least from a period 2 weeks before the incident until at least 1 month after. This uncontradicted expert testimony may not be ignored by a jury. Strickland v. Francis, 738 F2d 1542 (11th Cir. 1984). The defendant's statement, evidenced by a memorandum by one of the interrogating officers, was insufficient to prove that it was given (and thus the crimes occurred) during a lucid interval. In fact, based upon the medical testimony, the trial court found that defendant's statements were involuntary. Hence, such statements cannot prove that the defendant was sane when the statements were given. I therefore dissent.