## 70826. ELLIS v. THE STATE.
(336 SE2d 281)

CARLEY, Judge.

Appellant was indicted on two counts of terroristic threats and one count of public drunkenness. He was tried before a jury and found "guilty but mentally ill" on the first two counts and not guilty on the third. Appellant's motion for new trial was denied and he appeals.

1. Appellant contends that the trial court erred in failing to give

specific instructions to the jury that it must first find him to be criminally responsible for his acts before it would be authorized to consider whether he was "guilty but mentally ill." Initially, we note that the affidavit of the jury foreman alluded to by appellant may not be used to impeach the verdict and will not be considered in connection with this enumeration. OCGA § 17-9-41; *Bowman v. Bowman,* 230 Ga. 395, 396 (2) (197 SE2d 372) (1973).

The defense of insanity constitutes an admission of the commission of the physical acts constituting the offenses but a denial of the mental capacity to form the requisite *mens rea. Baldwin v. State,* 253 Ga. 721, 723 (325 SE2d 128) (1985). "Legal 'insanity' relates only to the ability of a defendant to distinguish between right and wrong, and whether he had a delusional compulsion which overmastered his will. [Cits.]" *Echols v. State,* 149 Ga. App. 620, 621 (255 SE2d 92) (1979). A verdict of "guilty but mentally ill," on the other hand, is authorized when the defendant is not legally "insane" but is otherwise mentally ill at the time of his commission of the alleged criminal acts. See *Jackson v. State,* 166 Ga. App. 477 (304 SE2d 560) (1983); *Awtrey v. State,* 175 Ga. App. 148, 150 (1) (332 SE2d 896) (1985).

The trial transcript of the instant case shows that the court charged the jury at length and in detail as to the law concerning insanity and the difference, as discussed above, between insanity and mental illness at the time of the commission of the act alleged to be criminal. The trial court also charged that "a crime is a violation of a statute of this state by a person of sound mind and discretion in which there shall be a union and joint operation of act and intention." These instructions, considered in their entirety and in the context in which they were given, adequately apprised the jury that it must make a finding that appellant was criminally responsible for his acts before it reached a verdict of "guilty but mentally ill." The jury was first instructed to return a *not guilty* verdict if it found that appellant had been *legally insane* at the time of the commission of the acts. See OCGA §§ 16-3-2 and 16-3-3. "We note that the trial court correctly charged the jury in the case now before us that if they found that [appellant] did not have reason sufficient to distinguish between right and wrong that would end their consideration of the case. . . ." *Keener v. State,* 254 Ga. 699, 703 (334 SE2d 175) (1985). Only then was the jury charged as to "guilty but mentally ill" as a possible verdict. In this regard, the jury was specifically instructed that such a verdict would be authorized if it found "beyond a reasonable doubt *under the evidence and the court's instructions* that [appellant was] *guilty* and was *mentally ill*" as defined in OCGA § 17-7-131 (a) (2). (Emphasis supplied.) Although not explicitly stated, clearly implicit in the entirety of the trial court's instructions was the principle that only legal insanity constituted a *complete defense* to the criminal

charges, whereas a "guilty but mentally ill" verdict would be authorized only if that complete defense were rejected and appellant was otherwise of sufficiently "sound mind" to be held legally accountable and guilty for his acts, albeit mentally ill at the time they were committed. See *Keener v. State*, supra.

2. Appellant asserts that his character was erroneously put in issue. A police officer who was the victim of one of appellant's terroristic threats was allowed to testify that, in addition to threatening to kill him, appellant had stated that he had "shot a policeman before and all they did was send me to Milledgeville. They said I was crazy." Testimony as to what was said to the victim during the continuing course of the crime was admissible, even though it may have shown other criminal conduct on the part of appellant. *Carter v. State*, 168 Ga. App. 177 (2) (308 SE2d 438) (1983); *Morgan v. State*, 161 Ga. App. 67 (2) (288 SE2d 836) (1982). The trial court therefore did not err in denying appellant's motion for mistrial on this ground.

3. Appellant asserts that his motion for directed verdict as to Count II of the indictment should have been granted. He contends that the sole evidence of the alleged terroristic threat underlying that count consisted of the uncorroborated testimony of the police officer to whom the threat was addressed.

OCGA § 16-11-37 "does not specify how the testimony must be corroborated. 'As in rape cases, the quantum of corroboration need not in itself be sufficient to convict, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged. [Cit.] Slight circumstances may be sufficient for corroboration and the question of corroboration is one solely for the jury. If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value. [Cit.] . . .' " *Boone v. State*, 155 Ga. App. 937, 939 (1) (274 SE2d 49) (1980). See also *Hornsby v. State*, 139 Ga. App. 254, 256 (2) (228 SE2d 152) (1976).

Although two separate incidents and victims were ultimately involved, the evidence adduced at trial showed that appellant's terroristic threats constituted " 'a system of mutually dependent crimes.' [Cits.]" *Harper v. State*, 249 Ga. 519, 531 (8) (292 SE2d 389) (1982). As to the crime alleged in Count I, the evidence showed that appellant threatened to kill the victim and also to kill "all white [men]." That these threats were made by appellant was corroborated by the victim's daughter and another eyewitness. After these threats were made, the police were called. Even after the police arrived, appellant continued to threaten the victim. Appellant was arrested and placed in a patrol car. While being driven to jail, appellant then committed the crime which underlay Count II, by threatening the officer who was driving the patrol car. According to the officer's testimony, the threat appellant directed to him was virtually identical to that which the

evidence showed had earlier been directed to the original victim. Appellant threatened to kill the officer and to kill all white police officers.

Although the subsequent threat against the officer was not actually overheard by anyone else, under the circumstances, the jury was authorized to find that the evidence concerning the similar previous threat also "tend[ed] to prove that the incident [involving the officer] occurred as alleged. [Cit.]" *Boone v. State*, supra at 939. As noted, the corroboration requirement of OCGA § 16-11-37 has been analogized to the corroboration that was formerly required in rape cases and that is still required in statutory rape cases. "In crimes involving sexual offenses, evidence of similar previous transactions is admissible '. . . to corroborate the testimony of the victim as to the act charged.' [Cits.]" (Emphasis supplied.) *Warren v. State*, 95 Ga. App. 79, 80 (1a) (97 SE2d 194) (1957). See also *McMichen v. State*, 62 Ga. App. 50, 53 (7 SE2d 749) (1940). There being sufficient corroboration of the officer's testimony, the trial court did not err in denying the motion for a directed verdict of acquittal. *Boone v. State*, supra.

*Judgment affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 26, 1985 —
REHEARING DENIED OCTOBER 10, 1985 —

*Timothy W. Floyd, Theresa M. Clyne*, for appellant.
*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Assistant District Attorney*, for appellee.