A11A0947. SLEDGE v. THE STATE.
(717 SE2d 682)

BARNES, Presiding Judge.

Michael L. Sledge appeals his convictions[1] for driving under the influence and driving on a suspended license. He contends the trial court erred by denying his motion for new trial based upon the court's earlier denial of his motion for a directed verdict on the driving on a suspended license charge. Sledge also contends his defense counsel was ineffective because he introduced a video of Sledge's earlier traffic stop and because he did not object to leading questions by the prosecutor. Finding no error, we affirm Sledge's convictions.

1. Sledge contends the trial court erred by denying his motion for new trial based upon the trial court's denial of his motion for a

---

[1] Sledge was also charged with driving without a license, driving with an expired tag, using an improper turn signal, and a seat belt violation, but he was acquitted of those offenses.

directed verdict of acquittal. Because Sledge's real complaint is that the trial court denied his motion for a directed verdict of acquittal, we will consider his motion under the standards appropriate for such motions rather than the denial of his motion for new trial. Courts should examine the substance of a motion, rather than its nomenclature, to determine what sort of relief is sought. *Thompson v. State*, 274 Ga. 818 (559 SE2d 730) (2002) (treating a motion to void judgments as a motion to withdraw guilty plea); *Marshall v. State*, 229 Ga. 841 (1) (195 SE2d 12) (1972) (there is no magic in nomenclature; substance controls our consideration of pleadings).

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. A directed verdict of acquittal should be granted only where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal. OCGA § 17-9-1. In reviewing the denial of a motion for a directed verdict made at the close of the State's case, an appellate court considers not only the evidence produced in the State's case-in-chief, but also any evidence introduced subsequent to the motion by the defense.

(Citations and punctuation omitted.) *Wilson v. State*, 233 Ga. App. 327, 328 (1) (503 SE2d 924) (1998). Sledge contends the evidence was insufficient to prove that he was notified that his license was suspended because the officer who was to have served the notice of suspension on him testified that she did not serve him personally as required.

Notice is an essential element of proving a violation of OCGA § 40-5-121 (a).

> OCGA § 40-5-121 (a) provides in pertinent part that "any person who drives a motor vehicle on any public highway of this state at a time when his privilege to do so is suspended, disqualified, or revoked shall be guilty of a misdemeanor." This is a strict liability statute, and the state need not prove criminal intent. However, notice is required by OCGA § 40-5-60, which provides that "(a)ll revocations and suspensions provided for in this chapter shall be effective on the

day the driver receives actual knowledge or legal notice thereof, whichever occurs first. Notice of suspension by operation of law shall be considered legal notice."

(Footnote omitted.) *State v. Fuller*, 289 Ga. App. 283, 283-284 (656 SE2d 902) (2008). In this regard,

[t]he term "legal notice" has been referred to as the same as "constructive notice." Constructive notice is information or knowledge of a fact imputed by law because the fact could have been discovered by proper diligence and the situation was such as to cast upon a person the duty to inquire into it. Implied notice is that notice which is inferred or imputed to a party by reason of his knowledge of facts or circumstances collateral to the main fact, of such a character as to put him upon inquiry, and which, if inquiry were followed up with due diligence, would lead him directly to the knowledge of the main fact.

(Citation and punctuation omitted.) *Hale v. State*, 188 Ga. App. 524, 525-526 (1) (373 SE2d 250) (1988). Consequently, to prove

the offense of driving with a suspended license, the State must show that the accused was driving, that his license was suspended, and that the accused had received actual or legal notice of the suspension. [Sledge contends] the State failed to prove he received actual or legal notice that his license was suspended, which is an essential element of the offense.

(Citation and punctuation omitted.) *Farmer v. State*, 222 Ga. App. 591 (474 SE2d 760) (1996). "[A]bsent proof by the State of actual or legal notice to the defendant a conviction for [driving with a suspended license] cannot be sustained." *Sumner v. State*, 184 Ga. App. 374, 375 (361 SE2d 536) (1987).

The law applicable to service of a notice of revocation of one's driver's license for refusing a blood alcohol test is contained in OCGA § 40-5-67.1 (f) (1) and (2):

(f) (1) The law enforcement officer, acting on behalf of the department, shall personally serve the notice of intention to suspend or disqualify the license of the arrested person or other person refusing such test on such person at the time of the person's refusal to submit to a test or at the time at which such a test indicates that suspension or

disqualification is required under this Code section. The law enforcement officer shall take possession of any driver's license or permit held by any person whose license is subject to suspension pursuant to subsection (c) or (d) of this Code section, if any, and shall issue a 30 day temporary permit. The officer shall forward the person's driver's license to the department along with the notice of intent to suspend or disqualify and the report required by subsection (c) or (d) of this Code section within ten calendar days after the date of the arrest of such person. This paragraph shall not apply to any person issued a 180 day temporary permit pursuant to subsection (b) of Code Section 40-5-67. The failure of the officer to transmit the report required by this Code section within ten calendar days shall not prevent the department from accepting such report and utilizing it in the suspension of a driver's license as provided in this Code section.

(2) If notice has not been given by the arresting officer, the department, upon receipt of the report of such officer, shall suspend the person's driver's license, permit, or non-resident operating privilege or disqualify such person from operating a motor vehicle and, by regular mail, at the last known address, notify such person of such suspension or disqualification. The notice shall inform the person of the grounds of suspension or disqualification, the effective date of the suspension or disqualification, and the right to review. The notice shall be deemed received three days after mailing.

Revocations or suspensions of driver's licenses are effective the day the driver receives actual knowledge or legal notice of the revocation or suspension.

All revocations and suspensions provided for in this chapter shall be effective on the day the driver receives actual knowledge or legal notice thereof, whichever occurs first. Notice of suspension by operation of law shall be considered legal notice. Any license suspension or revocation mandated in this chapter following a person's conviction for any offense, including suspensions due to the accumulation of points pursuant to Code Section 40-5-57, shall be by operation of law.

OCGA § 40-5-60 (a).

The form used to notify Sledge that his license was suspended contains the statement **"NOTE: PERSONALLY GIVE THE**

**YELLOW COPY TO THE LICENSEE."** The form, which was prepared on June 1, 2008, further contains the statement that "[t]he arresting officer's signature constitutes certification that the arresting officer delivered a copy of the form to the driver." Although the date on the form shows a report date of June 5, 2008, the numeral 5 is plainly written over a "1," and the officer's signature on the form was notarized on June 5, 2008.

The State introduced Sledge's Driver's License History Report showing that he had been served with the notice of his license suspension by a police officer on June 5, 2008. The officer who was to have served the notice on Sledge testified, "You know what? I think I forgot to give it to him that particular day when he was arrested." She later acknowledged that she did not serve him on June 1, and could not be sure how she served Sledge on June 5. She testified that she was not sure how she came to serve him on June 5 when the arrest was on June 1. She testified that she did not "know if [she] sent a copy to him or what." She could not remember what happened on June 5, or how she got the notice to Sledge. Nevertheless, she ultimately testified that she served Sledge with the notice, but that she could not recall when and how service was made. Because some evidence exists, even though contradictory, that Sledge was served with the notice of suspension, it cannot be said that the evidence demanded a verdict of acquittal. Thus, the jury was required to decide whether he received notice of his suspension.

> The weight and credibility of witnesses are questions for the triers of fact; that some evidence offered by a witness seems contradictory to his own or to some other's, or incomplete or uncertain, does not automatically discredit the evidence given by that witness for it is the function of the triers of fact to determine to what evidence it gives credence. It is not for us to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence. Rather, on appeal, we indulge every contingency in favor of the verdict.

(Citations and punctuation omitted.) *Norris v. State*, 220 Ga. App. 87, 88-89 (1) (469 SE2d 214) (1996). Therefore, the trial court did not err by denying Sledge's motion for a directed verdict of acquittal, and this enumeration of error is without merit.

2. Sledge contends his defense counsel was ineffective within the meaning of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), because he showed the jury a videotape of Sledge's earlier arrest for driving under the influence and because his counsel did not object to several leading questions by the prosecutor during

the direct examination of the State's witnesses.

Under our law,

> [t]o prevail on a claim of ineffective assistance, a defendant must show that counsel rendered deficient performance and that actual prejudice resulted. Counsel are strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and counsel's performance is evaluated without reference to hindsight. A petitioner has suffered actual prejudice only where there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Ineffective assistance claims are mixed questions of law and fact. We accept the [trial] court's findings of fact unless clearly erroneous and independently apply the law to those facts.

(Citation and punctuation omitted.) *Head v. Hill*, 277 Ga. 255, 266 (VI) (587 SE2d 613) (2003). Further, when considering a claim of ineffectiveness, a critical distinction exists between inadequate preparation and unwise trial strategy. *Hudson v. State*, 250 Ga. 479, 486 (8) (299 SE2d 531) (1983). Especially in matters of trial tactics, a Sixth Amendment claim cannot be judged by hindsight or result. *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998).

(a) Sledge asserts that by introducing the video of the earlier stop, his counsel allowed information prejudicial to Sledge to be played and replayed before the jury. Even though the strategy employed ultimately proved unsuccessful, this does not mean necessarily that Sledge's counsel was ineffective. Counsel pursued a strategy that resulted in Sledge being acquitted of four of the six charges against him.

Further, we must measure the trial defense counsel's performance under the circumstances existing at trial and not with the benefit of hindsight. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985). Measured in that manner, we find that the showing of the video was part of the trial strategy Sledge's counsel pursued. The defense counsel testified at the hearing on Sledge's motion for new trial that his theory of the case was to show through the video that the same two officers stopped Sledge both times and that they were targeting him. Counsel also testified that he felt he needed the video of the first case because no video existed of the second stop and the video of the first showed the poor investigation by the arresting officer, who was also the arresting officer in the second case. Although another trial defense counsel may have pursued a different

strategy or tactic, this does not constitute a denial of the effective assistance of counsel. *Heard v. State*, 177 Ga. App. 802, 804 (5) (341 SE2d 459) (1986).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

(Citations and punctuation omitted.) *Strickland v. Washington*, supra, 466 U. S. at 689.

Considering the totality of the trial and not just Sledge's allegation of isolated errors, we are satisfied that Sledge has not met his burden under *Strickland v. Washington* of showing that his counsel's performance was deficient for pursuing the trial strategy that he chose. Further, the constitutional right to assistance of counsel means "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." (Citation and punctuation omitted.) *Alderman v. State*, 241 Ga. 496, 511 (8) (246 SE2d 642) (1978).

(b) Sledge further contends his counsel was ineffective because he did not object to leading questions posed by the prosecutor during the direct examination of State's witnesses. When a defendant's complaint relates

> to tactical judgments made by such [trial] counsel . . . in the absence of a showing, and there is none in the present case, that the trial counsel's loyalty, integrity or best use of his ability is questioned, a new trial will not be granted on the ground that the defendant was not afforded competent representation.

*Walker v. State*, 226 Ga. 292, 295 (12) (174 SE2d 440) (1970). Also,

> trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them. Trial counsel's strategy was not patently unreasonable, and it was not error to deny his motion for new trial on the basis of ineffective assistance of counsel.

(Citation and punctuation omitted.) *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008). Further "[i]n the absence of testimony to the contrary, counsel's actions are presumed strategic. *Stanley v. Zant*, [697] F2d 955 (11th Cir. 1983), cert. denied, 467 U. S. 1219 [(104 SC 2667, 81 LE2d 372)] (1984)." *Earnest v. State*, 262 Ga. 494, 496-497 (5) (422 SE2d 188) (1992).

Sledge's trial defense counsel testified at the new trial hearing that he only objected to leading questions that he thought were "important," and the transcript shows that he did object to some leading questions posed by the prosecutor. Under this evidence, the trial court's finding that Sledge's defense counsel was not ineffective for failing to object to the leading questions was not clearly erroneous. This enumeration of error is also without merit.

(c) Sledge also contends that his counsel was ineffective because he failed to preserve these objections for appellate review by renewing "all objections at the end of the trial and therefore deprived [Sledge] of the right to have his objections and the trial court rulings reviewed as a basis for reversal." Although we cannot consider this argument because it asserts an issue not enumerated as error, *Rider v. State*, 226 Ga. 14, 15 (2) (172 SE2d 318) (1970), we must note that Sledge's contention asserts an issue that is not the law in this State. Having made a timely and proper objection, counsel is not required to renew his objections at the close of the case to preserve them for appellate review.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED OCTOBER 18, 2011.

*Michele B. Lord*, for appellant.
*Tasha M. Mosley, Solicitor-General, Jamila L. Wideman, Assistant Solicitor-General*, for appellee.