S12A0024. ALATISE v. THE STATE.
(728 SE2d 592)

MELTON, Justice.

Following a jury trial, Tunde Alatise appeals his conviction for the felony murder and aggravated assault of Aurelio German Mendoza-Garcia,[1] contending that the trial court made a number of evidentiary errors. For the reasons set forth below, we affirm.

---

[1] On October 11, 2006, Alatise was indicted in Gwinnett County for malice murder, felony murder, and aggravated assault. Following a jury trial ending on March 14, 2007, Alatise was found not guilty of malice murder, but guilty of felony murder and aggravated assault. Alatise

1. Viewed in the light most favorable to the verdict, the record shows that, at around 9:30 p.m. on the evening of July 8, 2006, Guadalupe Diaz noticed two black men walk behind the blue Mustang in which Mendoza-Garcia was sitting at the Bristol Court Apartments. Diaz went inside, but returned five minutes later when she heard a loud noise. She found Mendoza-Garcia in a breezeway, bleeding profusely from a gunshot wound. Just before dying, Mendoza-Garcia stated that he had been shot by a black man. On the same night, police were also called to investigate the hijacking of a red Acura Integra by two black males in Kendall Creek Apartments, approximately an hour and a half after Mendoza-Garcia's shooting. Subsequently, Leausha Nicholson was found driving the stolen car, and, after talking to her, police became interested in her brother, Javon. When interviewed, Javon implicated Alatise in the shooting of Mendoza-Garcia and the subsequent theft of the red Acura Integra. Detectives thereafter obtained and served an arrest warrant on Alatise. On direct examination at trial, Javon testified that he and Alatise intended to rob Mendoza-Garcia. Alatise approached Mendoza-Garcia, a struggle ensued, and Alatise shot the victim.[2] Javon also testified that he and Alatise later stole the red Acura Integra. Alatise's fingerprint was found inside this stolen car. In addition, similar transaction evidence of ten other armed robberies and/or car jackings were admitted into evidence, eight of which Alatise confessed to committing after being arrested.

This evidence was sufficient to enable the jury to find Alatise guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Alatise contends that the trial court erred by failing to charge the jury that Javon's entire testimony should be disregarded because he willfully gave false testimony in a material matter. See OCGA § 24-9-85. We disagree. Alatise neither requested this charge nor objected when it was not given. As a result, we review this enumeration of error only to determine whether the failure to give the charge constitutes plain error. *State v. Kelly*, 290 Ga. 29 (718 SE2d 232)

---

was sentenced to life imprisonment for felony murder, and the aggravated assault conviction was merged. Alatise thereafter filed a motion for new trial on March 19, 2007, and amended it on September 10, 2010. The motion for new trial was denied on June 27, 2011, and Alatise filed a timely notice of appeal. His appeal was then docketed to the January 2012 term of this Court and submitted for decision on the briefs.

[2] Javon's testimony was highly inconsistent. On cross-examination, he changed his story and said that he did not see or hear Alatise shoot Mendoza-Garcia.

(2011). The test to determine plain error is as follows:

> First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Punctuation and emphasis omitted.) Id. at 33 (2) (a). Pretermitting whether Alatise met his burden with regard to the first and second prongs of this test, we find the omission of a specific instruction on OCGA § 24-9-85 did not affect the outcome of the trial proceedings. A review of the charge in its entirety, which included instructions on impeachment and the credibility of witnesses, establishes that any error in the court's failure to give a charge based on OCGA § 24-9-85 (b) was harmless. *Evans v. State*, 209 Ga. App. 340 (2) (433 SE2d 426) (1993).

3. Alatise contends that police officers lacked probable cause at the time of his arrest, and, as a result, all of his statements following his arrest should have been suppressed. See *Wong Sun v. United States*, 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963). Specifically, Alatise argues that his arrest warrant was wholly and improperly based on inconsistent and untrustworthy information provided by Javon.

Prior to speaking with Javon, however, investigators knew he was the brother of the woman found to be driving a vehicle taken at gunpoint by two black males a short time after and a short distance from the scene of Mendoza-Garcia's murder. Javon stated that he had been at the scene of Mendoza-Garcia's shooting. Javon stated that he heard Alatise say "He grabbed me so I shot him." This information provided by Javon was corroborated by the facts and circumstances that police officers had independently gathered from the scene of Mendoza-Garcia's shooting.

> As the result of [Javon's] confession, which incriminating statements were consistent with information the officers had gained from independent investigation, the officers had

reasonably trustworthy information to conclude that [Alatise] was involved in the murder of [Mendoza-Garcia].

*Morgan v. State*, 241 Ga. 485, 487 (1) (246 SE2d 198) (1978). The trial court did not err by denying Alatise's motion to suppress.

4. Alatise argues that evidence of ten similar transactions was admitted in error because the similar transactions were not sufficiently similar to the crime in question. This contention lacks merit.

Evidence of independent acts or similar transactions must satisfy three elements to be admitted: (1) the evidence must be introduced for a proper purpose; (2) the evidence must establish by a preponderance of the evidence that the defendant perpetrated the similar transaction; and (3) the two transactions must be sufficiently similar or connected so that the existence of the former transaction tends to prove the latter transaction. [Cits.] *Bryant v. State*, 282 Ga. 631, 634 (3) (651 SE2d 718) (2007). The evidence is not to be admitted, however, if it merely raises an improper inference about the character of the accused. *Humphrey v. State*, 281 Ga. 596, 598 (2) (642 SE2d 23) (2007). To be admissible, an independent act "does not have to mirror every detail" of the crime charged, *Collum v. State*, 281 Ga. 719, 723 (4) (642 SE2d 640) (2007), and may reflect only a portion of the acts that establish the crimes being tried. See, e.g., *Oliver v. State*, 276 Ga. 665, 667 (3) (581 SE2d 538) (2003) (Evidence of defendant's entry by key into the apartments of women, "ostensibly for maintenance purposes," was sufficiently similar to charges of malice murder and burglary, which crimes included the unforced entry of the victim's apartment.). And, "similar transaction evidence is not limited to a defendant's previous illegal conduct. [Cit.]" *Phagan v. State*, 268 Ga. 272, 279 (4) (486 SE2d 876) (1997). "[W]hen similar transaction evidence is used to show bent of mind, course of conduct, motive or intent, 'a lesser degree of similarity is required than when such evidence is introduced to prove identity.' [Cit.]" *Barnes v. State*, 287 Ga. 423, 426 (3) (696 SE2d 629) (2010). "A trial court's decision to admit similar transaction evidence will not be disturbed absent an abuse of discretion. [Cit.]" *Moore v. State*, 288 Ga. 187, 190 (3) (702 SE2d 176) (2010).

*Chua v. State*, 289 Ga. 220, 232 (2) (710 SE2d 540) (2011).

A review of the record shows that, in nine out of the ten transactions, individuals were approached and subjected to an armed robbery attempt while they were walking in the parking lots of apartment complexes. In the tenth case, an employee at a fast food establishment was shot after refusing to open a store safe. In some cases, the victims were carjacked, and the stolen cars were found in the parking lot of the apartment complex where Javon lived. In a number of the robberies, the victims stated that the perpetrators were comprised of two black males and one white male (like Alatise and his co-defendants). All of the crimes occurred in a relatively small area and reflected a similar modus operandi. They were sufficiently similar to the crime against Mendoza-Garcia and were properly admitted. Id.

5. Alatise contends that the trial court erred by denying his motion for a directed verdict, arguing that there was no competent evidence to corroborate the testimony of his co-defendant, Javon. In this case, however, Javon's testimony found corroboration in the wealth of similar transaction evidence presented to the jury.

> " ' "The conduct of a defendant before, during the time of, and after the commission of a crime may be considered by the jury in establishing his intention and his participation, to determine whether or not such intention and conduct were sufficient corroboration of the testimony of an accomplice to sustain a conviction. This may be done by circumstantial as well as by direct evidence." ' [Cit.]" *Jackson v. State*, 178 Ga. App. 378 (343 SE2d 122) (1986). Such corroborating conduct includes the defendant's commission of similar transactions which " 'were clearly interwoven and linked (connected) with the facts of the crime charged. . . .' " (Emphasis in original.) *Perryman v. State*, 63 Ga. App. 825, 827 (12 SE2d 392) (1940). See also *Jackson v. State*, supra.

*Merrifield v. State*, 194 Ga. App. 734, 735 (1) (392 SE2d 725) (1990).

In this case, the similar transactions, eight of which Alatise admitted, showed a clear modus operandi of targeting individuals walking or driving within apartment complexes and robbing them. In addition, there was evidence of one similar transaction, the theft of the red Acura Integra, which occurred immediately after the shooting of Mendoza-Garcia, and Alatise's fingerprint was found inside this stolen car. This evidence of a clear crime spree committed by Alatise

and his co-defendants both before and after the shooting of Mendoza-Garcia corroborated Javon's testimony. As such, the trial court did not abuse its discretion by denying Alatise's motion for a directed verdict. Id.

6. Alatise maintains that the trial court erred by denying his motion for a mistrial after the jurors watched a portion of his videotaped statement which they were not supposed to view. The record shows that, in the jury room without supervision, the jurors watched a video of a police interview with Javon and Alatise. By doing so, the jurors were able to see, in addition to the material that they had seen at trial, approximately a minute's worth of additional video at the end of the videotape. During this minute, Javon and Alatise scanned the room to find the cameras, spoke briefly about one of the similar transactions, and Alatise asked Javon what he had done with the "what-cha-ma-call-it?" After this error was discovered, the jurors were questioned by the trial court. Initially, 11 out of 12 jurors did not realize that they had seen any new material, but, upon further questioning, they realized that they had. In any event, all jurors stated that they could disregard the extraneous information without problem. Thereafter, the trial court gave a curative instruction, and the jury continued its deliberation. This situation is analogous to one in which a witness for the State voluntarily and unexpectedly testifies to a prejudicial matter.

" 'Where a witness for the State in a criminal case voluntarily injects into the trial improper and prejudicial matter, on motion for a mistrial based thereon, whether mistrial must be granted as the only corrective measure or whether the prejudicial effect can be corrected by withdrawing testimony from the consideration of the jury under proper instructions, is a matter ordinarily in the discretion of the trial court.' [Cit.]" *Willingham v. State*, 118 Ga. App. 321, 324 (163 SE2d 317) (1968); *Bell v. State*, 159 Ga. App. 621, 622 (3) (284 SE2d 639) (1981). The trial court's ruling will not be disturbed on appeal absent an abuse of discretion, which does not exist if the curative instructions given can serve to prevent the alleged harmful testimony from having any prejudicial impact and/or the jury indicates that it can follow the instructions and will not consider any improper prejudicial statements or testimony. *Flowers v. State*, 252 Ga. 476 (2) (314 SE2d 206) (1984) and cits.; *Dunn v. State*, 251 Ga. 731, 734 (4) (309 SE2d 370) (1983) and cits.; *Spraggins v. State*, 240 Ga. 759 (2) (243 SE2d 20) (1978).

*Crawford v. State*, 256 Ga. 585, 587 (2) (351 SE2d 199) (1987). In this case the jury clearly indicated that it could and would follow the trial court's curative instruction. There was no error.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 18, 2012 —
RECONSIDERATION DENIED JULY 26, 2012.

*Robert Kenner, Jr., Cherri L. Shelton*, for appellant.

*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Brittany N. Jones, Assistant Attorney General*, for appellee.