**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 21, 2014**

# In the Court of Appeals of Georgia

A13A2210. NICHOLS v. THE STATE.

MILLER, Judge.

Following a jury trial, William Shane Nichols was convicted of aggravated sexual battery (OCGA § 16-6-22.2 (b)), aggravated sodomy (OCGA § 16-6-2 (a) (2)), false imprisonment (OCGA § 16-5-41 (a)), and public indecency (OCGA § 16-6-8 (a) (3)).[1] Nichols filed a motion for new trial, which the trial court denied. Nichols appeals, contending that the trial court erred in denying his motion for a directed verdict of acquittal on the false imprisonment count, and that the trial court erred in denying his motion for a mistrial on the ground that the prosecutor improperly placed

---

[1] The jury acquitted Nichols of battery, and the trial court entered a directed verdict of acquittal for criminal trespass.

his character at issue by referring to his prior incarceration.[2] For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict,[3] the trial evidence shows that, after Nichols rekindled a romantic relationship with the victim, he moved in with the victim and the couple's daughter in 2009. Approximately one month later, on the night of July 31, 2009, Nichols and the victim went to dinner and then to several bars. The victim and Nichols ultimately met up with several of the victim's coworkers, including Tracy McClure, at a bar named Bailey's at about 10:45 p. m. Nichols had several alcoholic drinks prior to arriving at Bailey's and he continued drinking while there. Around 12:45 a.m., the victim noticed that Nichols was no longer at the bar. When Nichols returned to the bar about 20 minutes later, he appeared to be more intoxicated and was "grabby-feely" with the victim. The victim told him to stop because they were in public. Nichols and the victim remained at Bailey's for about another hour, and Nichols continued drinking during this time.

---

[2] Nichols also challenges the denial of his motion for directed verdict on the battery count, but this challenge is rendered moot because he was found not guilty of that offense. See *Matthews v. State*, 268 Ga. 798, 803 (5) (493 SE2d 136) (1997).

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Nichols, the victim, and one of the victim's coworkers then left the bar, and the victim drove to the coworker's apartment. Upon dropping off the coworker, Nichols became belligerent, insisted that he be allowed to drive, and took the car keys from the victim. Some friends of the victim who were at the apartment complex helped the victim move Nichols into the passenger seat.

The victim then began driving home with Nichols. As the victim was driving, Nichols tried to remove her shirt, and the victim told him to stop. Nichols then told the victim that he wanted to "fuck [her] hard right there," and yelled at her to stop the vehicle. When the victim stopped, Nichols got out of the vehicle and went around to the driver's side, jerking open the door. The victim got scared, screamed, and reached for her cell phone. Nichols took the phone from the victim, smashed it against the side of the vehicle, and hit her in the face with it. Nichols then got into the driver's seat, began driving, and told the victim that she was going to die with him.

Nichols drove for a while until he stopped on Tara Court – a residential area. He then exited the vehicle, and went around and opened the passenger's side door. Nichols removed the victim from the vehicle, pushed her against the vehicle, and forcefully pulled down her pants and underwear. Nichols then performed oral sex on the victim without her consent. The victim was afraid that if she resisted, Nichols

3

would kill her. Nichols stopped momentarily before moving the victim into the backseat of the vehicle, at which point he performed oral sex on her again. Nichols, who by this time had removed his clothing, sat on the victim's chest and tried to shove his penis into her mouth. Nichols also bit the victim several times and shoved his fingers inside her vagina so hard that it hurt. When the victim asked Nichols to stop, he told her, "I hope it hurts. I want to break your pussy."

Nichols eventually stopped when he became distracted by a nearby stop sign. Nichols then walked over to the stop sign and proceeded to pull it down and ride "like a pony." During this time, the victim gathered Nichols's clothes, threw them into the vehicle, and drove off. The victim went to a Waffle House, locked herself in the bathroom, and called Tracy McClure for help. McClure and another friend met the victim at the restaurant and took her to the police station. A detective interviewed the victim and observed physical marks consistent with a physical assault. The victim was then taken to a hospital for a physical examination, and the examining physician observed trauma consistent with her reports of sexual assault.

Meanwhile, a homeowner who resided near Tara Court, was awaken by loud knocking at her door. The homeowner looked through her blinds and saw a naked man holding a street sign. The homeowner called the police when Nichols entered a

4

car parked in the homeowner's driveway. The responding police officer found Nichols in the car and took him into custody.

1. Nichols contends that the trial court erred in denying his motion for a directed verdict on the false imprisonment count. We disagree.

> A directed verdict is appropriate when there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal or not guilty as to the entire offense or to some particular count or offense. When reviewing a denial of a motion for a directed verdict, we apply the same test as when reviewing a challenge to the sufficiency of the evidence, i.e., whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. The jury's verdict will be upheld as long as there is some competent evidence to support each fact necessary to make out the State's case.

(Punctuation and footnotes omitted.) *Calhoun v. State*, 318 Ga. App. 835, 837 (2) (734 SE2d 809) (2012). "All that is required to prove false imprisonment is there be an arrest, confinement or detention of the person, without legal authority, which violates the person's personal liberty (i.e., against his or her will)." (Citations and punctuation omitted.) *Murrell v. State*, 317 Ga. App. 310, 316-317 (1) (730 SE2d 675) (2012); see also OCGA § 16-5-41(a). There is no requirement that the imprisonment be for a specific length of time. *Murrell*, supra, 317 Ga. App. at 317 (1).

In this case, the evidence showed that, after moving the victim into the backseat of his vehicle, Nichols sat on the victim's chest and forced his fingers into her vagina. The victim pleaded with Nichols to stop and get off her, but he refused. Nichols did not stop until he became distracted by the stop sign and exited the vehicle, which gave the victim an opportunity to gather Nichols's clothes and leave. This evidence was sufficient to sustain Nichols's conviction for false imprisonment. See *Murrell*, supra, 317 Ga. App. at 316-317 (1) (evidence sufficient to sustain conviction for false imprisonment where the defendant entered the victim's room uninvited, put his hand across her mouth, and lay on top of her, which confined her movement and rendered her unable to resist as he raped her). Accordingly, Nichols was not entitled to a directed verdict as to the false imprisonment charge.

2. Nichols also contends that the trial court erred in denying his motion for a mistrial on the ground that the prosecutor violated the trial court's motion in limine to exclude references to Nichols's being in custody. Nichols asserts that the prosecutor's reference improperly inserted his character into evidence. We disagree.

"The decision to grant a mistrial is within the discretion of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential

6

to the preservation of the right to a fair trial." (Citation omitted.) *Jackson v. State*, 292 Ga. 685, 689 (4) (740 SE2d 609) (2013).

Prior to trial, the trial court granted Nichols's motion in limine to preclude testimony about any prior bad acts, criminal conduct, or criminal investigations of Nichols. At trial, the prosecutor asked McClure whether she had communicated with Nichols or sent him cards in jail following his arrest. Contrary to Nichols's claim, the entirety of the prosecutor's question shows that he was referring to Nichols's time in jail based upon his arrest in this case, not any prior incarcerations. Even if, as Nichols contends, the trial court's ruling on his motion in limine precluded all references to his ever being in custody, the prosecutor's statement was not so prejudicial as to require a mistrial. Notably, Nichols did not previously object to the admission of other evidence of his arrest in this case. As the trial court noted, the jury was obviously alerted to the fact that Nichols had been in jail at some point. The fact that the prosecutor briefly mentioned Nichols's time in jail did not put his character at issue and did not require a mistrial. See *Taylor v. State*, 272 Ga. 559, 561 (2) (c) (532 SE2d 395) (2000) (The "mere mention that a defendant has been in jail falls short of placing his character at issue.") (citation omitted); *Isaac v. State*, 269 Ga. 875, 877-878 (5) (505 SE2d 480) (1998) (a passing reference to a defendant's record or time

7

in jail was did not require reversal of conviction). Accordingly, the trial court did not abuse its discretion in denying Nichols's motion for mistrial.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*