301 Ga. 241
FINAL COPY

S17A0315.  McCRAY v. THE STATE

BENHAM, Justice.

Appellant Don McCray was convicted of murder and other offenses arising out of the shooting death of Darius Grover.[1]  McCray was apparently jealous of Grover's relationship with Lashante Holloway, McCray's former girlfriend.  On the evening of the shooting, Grover was visiting Holloway's apartment when McCray entered the apartment complex and commenced knocking, and then beating, on her door, but Holloway would not answer.

---

[1]  The crimes occurred on August 18, 2003.  On November 7, 2003, a Fulton County grand jury returned an indictment charging appellant with malice murder, felony murder (aggravated assault with a deadly weapon), felony murder (possession of a firearm by a convicted felon), aggravated assault with a deadly weapon, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony.  On September 7, 2005, a nolle prosequi order was entered as to one count of felony murder and its predicate felony of possession of a firearm by a convicted felon.  After a jury trial conducted between August 22 and September 7, 2005, the jury found appellant guilty of the remaining counts of the indictment.  The guilty verdict for felony murder was vacated as a matter of law, and the guilty verdict for aggravated assault merged into the malice murder guilty verdict for purposes of conviction and sentencing.  The trial court sentenced appellant to life imprisonment with the possibility of parole for the malice murder conviction, and five years to serve consecutively for the conviction for possession of a firearm during the commission of a felony.  Appellant filed a timely motion for new trial that was later amended.  After conducting a hearing, the trial court denied appellant's motion for new trial by order dated January 28, 2015.  By order dated February 27, 2015, the order denying the motion for new trial was vacated, and a new order denying appellant's motion for new trial was entered.  On March 26, 2015, appellant filed a timely notice of appeal.  This case was docketed to the term beginning in December 2016 for a decision to be made on the briefs.

Eventually, Holloway spoke to McCray through the locked door and told him to leave. He then commenced calling her repeatedly on the phone, but Holloway refused to answer. Grover became irritated and answered the phone, angrily telling McCray to stop calling and beating on the door. The two men engaged in an argument over the phone. Later, Grover called a friend, Mr. Burton, who lived in the adjacent apartment building with his then-fiancée, and invited him to come over to Holloway's apartment to play video games.

After Burton arrived, Holloway left to go visit Burton's fiancée, Ms. Daniel. She believed McCray was gone. When Holloway heard McCray's voice calling her name and heard him chasing after her, she commenced running toward the other couple's apartment, and she testified at trial that she was in fear for her life. Holloway then heard McCray banging on other apartment doors and calling her name. Finally, he arrived at the door of the apartment where Holloway had fled, started beating and kicking at the door, and commenced threatening Holloway. Daniel telephoned Burton and told him about the man at her door, and both Burton and Grover ran over to Burton and Daniel's apartment. After a verbal confrontation, McCray started running, and Burton and Grover chased after him. They watched McCray

2

reach his car outside the apartment complex gate, but when McCray opened the driver's door, McCray drew a gun and pointed it at the other two men, who ran back to Burton's apartment. According to Burton's testimony, McCray could have driven away from the scene at that point. When Burton and Grover arrived back at Burton's apartment, Holloway expressed concern about her young daughter who was alone at her apartment, and Holloway said she wanted to go back to get her. Grover went to the apartment of a friend who lived next door to Burton and Daniel to whom he had given his shotgun and ammunition for safekeeping. That friend returned Grover's shotgun along with one cartridge. The friend tried to get the men to calm down, but Grover kept saying they had to protect themselves. He declared that no one was going to pull a gun on him over a woman. In McCray's custodial statement to the authorities, which was videotaped and played to the jury, he admitted that after reaching his car he had followed behind Grover and Burton and hid under the stairs to Burton's apartment where, he acknowledged, the two men did not see him. Grover told Holloway he would stand watch with the shotgun to protect her as she went to get her daughter, and said that if he saw McCray he was going to "bust him."

Hearing this statement, McCray came out from his hiding place under the apartment building stairs and opened fire while angrily shouting twice at Grover, "You going to do what?" McCray struck Grover at least six times. Grover returned his one shot, missing McCray and striking the building's staircase. Some shotgun shell pellets apparently ricocheted and a few of them hit McCray's arm, but he was otherwise unhurt. An eyewitness who observed these events from her window in another building testified she had not seen Grover point a weapon at anyone when she heard six or seven gunshots and then left her window. Grover died at the scene from multiple gunshot wounds, some of which entered his back. McCray fled the scene, but he turned himself in the next day. In response to questioning after being read his rights, McCray gave conflicting statements, first saying Grover fired the first shot, and then stating that he made the challenging comment to Grover about what Grover was going to do "after I had shot him and he shot me." After his trial and conviction, McCray filed this appeal.

1. McCray's sole defense was justification in that he acted in self-defense. In his first two enumerations of error, McCray asserts the evidence was insufficient to convict him of aggravated assault with a deadly weapon, and also that the State failed to disprove every other reasonable hypothesis

except guilt and thus failed to prove guilt beyond a reasonable doubt. We note, however, that although the jury found McCray guilty of aggravated assault, he was neither convicted nor sentenced for that offense since the guilty verdict for aggravated assault merged into the guilty verdict for malice murder, and he was convicted and sentenced only for the latter offense. See *Culpepper v. State*, 289 Ga. 736, 738 (2) (a) (715 SE2d 155) (2011). Consequently, the assertion that the evidence was insufficient to support the conviction for aggravated assault is moot. With respect to the sufficiency of the evidence to support the conviction for malice murder, we conclude the evidence was sufficient to authorize a jury to find McCray guilty beyond a reasonable doubt.

Citing OCGA §§ 16-3-20 and 16-3-21 (a), however, McCray asserts that he presented sufficient evidence to show justification by establishing that he reasonably believed his actions were necessary to defend himself against Grover. As in any case in which a defendant effectively raises such an affirmative defense, the State in this case had the burden of disproving McCray's defense of justification and self-defense beyond a reasonable doubt,[2] and McCray asserts that the State failed to meet this burden. But

---

[2] See *Mosby v. State*, 300 Ga. 450, 451 (1) (796 SE2d 277) (2017).

5

where, as here, conflicting evidence was presented regarding whether a defendant acted in self-defense in shooting the victim, the jury is free to reject the evidence in support of self-defense and to accept the evidence that the defendant did not act in self-defense. See *Bradford v. State*, 299 Ga. 880, 881 (1) (792 SE2d 684) (2016); *Anthony v. State*, 298 Ga. 827, 829 (1) (785 SE2d 277) (2016).

Multiple witnesses testified that McCray came out from his hiding place behind the victim and loudly taunted him as he fired his weapon. Indeed, in the initial statement McCray gave to the authorities, he admitted surreptitiously following the victim and then taunting him as he fired. Several witnesses testified the victim was standing with his back to McCray when shots rang out and before the victim fired a shot. This testimony is consistent with the medical examiner's testimony about the location of some of the victim's wounds. It is also consistent with expert testimony that, given the shot pattern from a shotgun, it would be highly improbable that a person who fired a shotgun at another person at such a short range as was involved in this case would miss the target (with the exception here of a few pellets), and that missing the target would be consistent with spinning around and firing the shotgun after having already been struck with a bullet.

6

McCray argues that the evidence demonstrated he had an innocent reason for returning to the apartment building, as he told the officer who interrogated him — to look for his phone, not to pursue the victim — and that the only evidence regarding who was the aggressor in the gun fight was circumstantial. Because McCray claims the circumstantial evidence supports more than one theory about the shootings, he argues the State failed to disprove every other reasonable hypothesis except that of guilt, as the State is required to do in a circumstantial evidence case.[3] Evidence was presented, however, that no phone was found on the premises during the police officers' exhaustive search of the property for ballistic evidence immediately after the shooting; and in his custodial statement, McCray admitted he followed Grover and Burton back onto the property after their encounter at McCray's car, outside the gate of the apartment complex. The evidence showed that McCray had earlier pursued Holloway and angrily attempted a confrontation with her. The jury was not required to believe McCray's assertion that he returned for an innocent reason.

Further, we reject the assertion that the evidence of McCray's guilt was purely circumstantial. Although none of the witnesses could state that they

---

[3] See Georgia's former Evidence Code at OCGA § 24-4-6, the provisions of which were carried forward into the new Evidence Code and can now be found at OCGA § 24-14-6.

saw McCray pull the trigger, several witnesses testified that Grover was facing away from McCray and the building when they heard the shooting begin. "Direct evidence is that which is consistent with *either* the proposed conclusion *or* its opposite; circumstantial evidence is that which is consistent with *both* the proposed conclusion *and* its opposite." (Citation and punctuation omitted; emphasis in original.) *Stubbs v. State*, 265 Ga. 883, 885 (2) (463 SE2d 686) (1995). As this testimony is consistent only with the conclusion that McCray started the gun battle in this case and was the aggressor, we conclude the evidence of guilt was not purely circumstantial. From the evidence presented, the jury could conclude McCray pursued Grover and Burton, laid in wait to shoot Grover, and commenced shooting when Grover's back was turned to him. The State carried its burden of presenting sufficient evidence to authorize any rational trier of fact to find McCray guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2.     McCray asserts the trial court erred in denying his motion to suppress evidence relating to the custodial statement he gave to the authorities when he voluntarily turned himself in. At the hearing on the motion, the interrogating officer testified he first spoke to McCray over the

8

phone after the officer had made attempts to reach McCray through his relatives as well as by calls to McCray's own phone number. Upon speaking to McCray, the officer told him he needed to turn himself in, and that it would be in his best interest if he did so. When McCray tried to tell the officer what had happened, the officer told him he did not want to go into that over the phone because the officer needed to advise him of his rights before he gave a statement. The officer testified that when McCray presented himself to the homicide office the next day, the officer took McCray into his office, provided him with something to drink, advised him of the charges he was facing, asked initial questions aimed at assessing whether McCray was properly oriented, and gave him *Miranda*[4] warnings. According to the officer, McCray signed a waiver form and told the officer he did not object to having his statement videotaped. During the interval between when McCray first signed a waiver of rights to the time when the two men went to an interview room where the statement was videotaped, McCray stated that he shot Grover but that it was in self-defense. The transcript of the recording (that was played to the jury at trial) indicates the officer stated that although he had already advised McCray of his rights, he wanted to do so again for the benefit

_____

[4] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

9

of the video camera, to which McCray stated "Okay," and responded that he understood. The State was able to produce only the waiver form McCray executed on camera and not the form the officer testified was executed just minutes before the men adjourned to go into the interrogation room. Nevertheless, the trial court summarily denied McCray's motion to suppress.

(a)     McCray asserts on appeal that the State violated his constitutional rights against self-incrimination by interviewing him before advising him of these rights. But the only evidence presented at the motion hearing regarding this issue was the officer's testimony that McCray was fully advised of his rights before he gave any statement to the authorities, even the admission that he shot Grover in self-defense, and the trial court was entitled to credit that testimony.

(b)   Likewise, McCray's assertion that admission of his statement violated the principle set forth in *Missouri v. Seibert*[5] is unsupported. In *Seibert* the defendant was first interrogated before he was advised of his constitutional rights, and only after he confessed did the interrogating officers provide the defendant with *Miranda* warnings and obtain a second statement.

[5] 542 U. S. 600 (124 SCt 2601, 159 LE2d 643) (2004).

10

The uncontested evidence in this case, by contrast, supports the conclusion that McCray was duly advised of his constitutional rights before he made any inculpatory statement.

(c)   We also reject McCray's argument that the State's failure to produce the original waiver of rights form amounts to a violation of the State's duty to disclose exculpatory information to the defense as set forth in *Brady v. Maryland*.[6]  McCray asserts the document would be exculpatory because the interrogating officer testified he would have noted the time it was executed on the face of the waiver form.  To prevail on a *Brady* claim, a defendant must establish four factors:

> (1) [T]he State, including any part of the prosecution team, possessed evidence favorable to the defendant; (2) the defendant did not possess the favorable evidence and could not obtain it himself with any reasonable diligence; (3) the State suppressed the favorable evidence; and (4) a reasonable probability exists that the outcome of the trial would have been different had the evidence been disclosed to the defense.

(Citation omitted.) *State v. James*, 292 Ga. 440, 441 (2) (738 SE2d 601) (2013).  At the motion to suppress hearing, the officer testified he had initially possessed the evidence in question.  But that same undisputed testimony established that the initial waiver form did not reflect evidence

---

[6]  373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963).

11

favorable to the defendant because, according to the officer, it was executed prior to taking any statement from the defendant. Having presented no evidence or testimony to dispute the officer, McCray has failed to establish the first of the four required factors to show a *Brady* violation — that the evidence in question was favorable to him.

(d) Finally, McCray argues the State failed to meet its burden of proving his custodial statements complied with the evidentiary standard of former OCGA § 24-5-50: "To make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury."[7] He points to testimony of the interrogating officer at the motion to suppress hearing regarding the messages he left for McCray with McCray's relatives and his telephone conversation with McCray before he arrived at the homicide division headquarters to turn himself in. But the officer's undisputed testimony shows each of these statements was aimed at encouraging McCray to turn himself in, not to give a statement to police. The "slightest hope of benefit," as used in the statute, refers to a promise of reduced criminal punishment, such as "a shorter sentence, lesser charges, or no charges at all," to induce the suspect to make a

---

[7] This provision is now found in the new Evidence Code at OCGA § 24-8-824.

12

statement. (Citation and punctuation omitted.) *Brown v. State*, 290 Ga. 865, 868-869 (2) (b) (725 SE2d 320) (2012). This allegation of error is not supported by the evidence.

The officer acknowledged he told McCray over the phone before he turned himself in that he knew Grover's weapon had been discharged and "it looked like self-defense." But this statement does not amount to a representation that McCray would not be arrested or charged or that turning himself in would lead to a reduction in charges or sentencing. Again, it does not support McCray's assertion that his statement was induced by the promise of benefit. See *Shepard v. State*, 300 Ga. 167, 169-170 (2) (794 SE2d 121) (2016) (the interrogating officers' discussion with defendant about the possibility of seeking a deal with the prosecutor, in which one officer used the term "accessory," did not amount to a promise of benefit that rendered defendant's custodial statement involuntary); *Jackson v. State*, 284 Ga. 484, 486 (2) (668 SE2d 700) (2008) (detective's statement that he knew defendant was not the shooter did not taint the voluntariness of the defendant's statement). Further, the undisputed evidence shows that the officer informed McCray of the charges he was facing before he gave his statement. McCray has failed to demonstrate he was induced to give his

13

statement by the hope that by doing so he would not face the charges that were ultimately brought against him. Accordingly, this enumeration lacks merit.

3. McCray asserts the trial court erred in denying his motion in limine in which he sought to preclude the State from referring to Grover as a victim at trial. Because McCray asserted he shot Grover in self-defense, McCray argues that the determination of whether Grover was a victim of a crime was an issue to be determined by the jury, and he argues that the State's repeated use of the term "victim" to describe Grover amounts to an improper commentary on the evidence. It appears that this Court has not previously addressed this issue. The Court of Appeals, however, has rejected a similar argument. See *Gober v. State*, 203 Ga. App. 5, 6 (2) (416 SE2d 292) (1992), overruled on other grounds by *Dudley v. State*, 273 Ga. 466 (542 SE2d 99) (2001). In the case now before us, it was obvious from the evidence and argument presented to the jury that McCray admitted he shot Grover but nevertheless asserted it was not a crime because he did so in self-defense, thereby creating an issue for jury determination as to whether Grover was the victim of a crime. The trial court gave proper jury instructions regarding justification by reason of self-defense. The denial of a motion in limine is

14

reviewed on appeal for abuse of discretion, and will not be reversed unless the trial court's discretion was abused. *Davis v. State*, 285 Ga. 343, 346 (5) (676 SE2d 215) (2009). McCray has failed to demonstrate reversible error in this regard. Compare *Clark v. State*, 300 Ga. 899 (2) (a) (799 SE2d 200) (2017) (rejecting appellant's claim of ineffective assistance of counsel for failure to object to the State's references to the victim's death as a "murder" during examination of some witnesses because, inter alia, appellant failed to show he was harmed by use of the word).

4. In the order denying McCray's motion for new trial, the trial court correctly found McCray did not properly preserve the issue of whether he is entitled to a new trial as a result of an unspecified familial relationship between the prosecutor and an unidentified juror because he abandoned the issue by failing to support it with argument or supporting facts or law. Consequently, this issue was not preserved for appeal, and this enumeration of error is not properly before us for review.

5. Although McCray filed a motion in limine with respect to certain autopsy photographs, it was not ruled upon as a result of defense counsel's statement that the defense and prosecution might be able to agree upon which photographs would be admitted. At the point of the trial at which the State

proffered the photographs through the testimony of the medical examiner, however, the defendant's counsel stated he had no objection and they were admitted into evidence.    Consequently, this issue was waived for appellate review.  See *Zamora v. State*, 291 Ga. 512, 514 (3) (731 SE2d 658) (2012) (defendant waived the right to raise admission of autopsy photographs because he failed to object at trial); *Allen v. State*, 290 Ga. 743, 744 (2) (723 SE2d 684) (2012) (appellate review waived when defense counsel affirmatively stated he had no objection to the admission of defendant's written statement).[8]

6.    In a statement to investigators, the witness who gave back Grover's shotgun just prior to the shooting explained that he had taken Grover's gun from him for safekeeping on New Year's Eve because Grover was drunk. The State moved to exclude this evidence at trial, arguing that admission of that portion of the witness' statement would impermissibly place the deceased's character in issue.  In response, McCray's counsel stated he was not attempting to place Grover's character in evidence but wanted to exercise his right to a full and sifting cross-examination of the witness and "simply to

---

[8]  While the new Evidence Code, at OCGA § 24-1-103 (d), allows plain error review of unpreserved evidentiary issues, that Code does not apply to the trial in this case because it was conducted prior to January 1, 2013.

inform the jury as to why that shotgun was in [the witness'] possession." In turn, the State argued that the evidence of why the witness came into possession of the gun was irrelevant to any issue being tried. The trial court granted the State's motion in limine.

McCray now claims the trial court's ruling constituted reversible error because the evidence he sought to admit was relevant to attack the victim's character in that it would have shown the victim's general reputation for violence. First, the argument that the witness' statement would have shown the victim's general reputation for violence was not asserted to the trial court or ruled upon by that court, and thus has been waived. See *McClendon v. State*, 299 Ga. 611, 616 (4) (A) (791 SE2d 69) (2016). Second, the witness' statement, without more, does not relate to the victim's general reputation for violence, and McCray made no proffer of other evidence the witness could provide regarding the reason he had possession of the gun that would reflect upon the victim's reputation for violence. This Court reviews a trial court's decision to admit or refuse to admit evidence for abuse of discretion, and none is shown in this case. See *Davis v. State*, supra, 285 Ga. at 346 (5). In any event, McCray cannot show he was harmed by the trial court's ruling because, in the end, the witness' statement was introduced when the officer

17

testified without objection to what the witness had told him in response to a question from McCray's counsel.

7. McCray's claim that the trial court erred when it granted the State's motion in limine to exclude evidence of previous altercations between the deceased and third parties is without merit. The record reflects that despite the ruling to exclude this evidence, the testimony that McCray sought to admit was, in fact, presented to the jury during defense counsel's cross-examination of one of the State's witnesses. Consequently, even if McCray could demonstrate error by the grant of the State's motion in limine, he can show no harm. See *Harris v. State*, 279 Ga. 522, 524 (2) (615 SE2d 532) (2005).

8. We reject McCray's assertion that the trial court erred by permitting the victim's mother, as opposed to some other witness without a familial relationship, to identify the victim from an in-life photograph. While this Court has stated that the better practice is not to permit a family member to identify the victim by photograph when other non-related witnesses are available to do so,[9] McCray objected to admission of the photograph only on the ground that it was irrelevant and not because the identification was made

_____

[9] See *Glenn v. State*, 296 Ga. 509, 511-512 (2) (769 SE2d 291) (2015).

18

by a family member.  Accordingly, this issue is waived because the objection raised on appeal was not raised nor ruled upon below.  See *Turner v. State,* 299 Ga. 720 (4) (791 SE2d 791) (2016); *Godfrey v. State*, 227 Ga. App. 576 (2) (489 SE2d 364) (1997).

9.  During the State's closing argument, the prosecutor pretended to call the decedent to the stand, after which the prosecutor took the stand, pretended to swear herself in, and commenced offering "testimony" as if the victim himself were testifying.  Assuming the persona of the victim, the prosecutor stated she was telling the jury things the victim wanted to say but could not.  The prosecutor spoke in the first person of experiences the victim would now miss in life, such as watching his daughter walk down the aisle, wishing his mother a happy Mother's Day, talking to his brothers, and attending family barbeques.  Speaking as the victim, the prosecutor also stated that when the victim got out a shotgun, he was simply doing what he felt he had to do to protect the women, himself, and Holloway's child. McCray's trial counsel raised no objection.

On appeal, McCray argues the prosecutor's statements amounted to an improper victim impact statement which may be made to a jury only during the sentencing phase of a capital murder prosecution, pursuant to

19

OCGA § 17-10-1.2, and only after the trial court has made a prior determination that the statement is not unduly prejudicial. See *Lucas v. State*, 274 Ga. 640, 643 (2) (b) (555 SE2d 440) (2001); *Turner v. State*, 268 Ga. 213, 214 (2) (486 SE2d 839) (1997). He also asserts that his trial counsel's failure to object should not waive this error on appeal because the prosecutor's comments were prejudicial and substantially prevented him from receiving a fair trial. This Court, however, has ruled that in a non-capital case, "the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." (Citation and punctuation omitted.) *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012) (issue was waived for failure to object where the defendant in a murder case complained on appeal that during closing argument the prosecutor inappropriately expressed personal opinions regarding credibility of witnesses and regarding the defendant's guilt; implied the defendant posed a future danger to society if acquitted; commented on facts not in evidence; and appealed to the sympathy and biases of the jurors). Further, plain error review is not available for errors not preserved in the trial court that relate to allegedly improper remarks by a

20

prosecutor during closing argument. See *Durden v. State*, 299 Ga. 273, 277 (3) (787 SE2d 697) (2016).

While we strongly disapprove of the prosecutor's attempt in her closing argument to "speak" for the victim, and caution against such a practice, given the failure to properly object, we cannot say the closing argument made in this case entitles the defendant to a new trial.[10]

10. For the reasons set forth herein, we affirm the trial court's

denial of McCray's motion for new trial.

Judgment affirmed. All the Justices concur.

Decided April 17, 2017 – Reconsideration denied May 30, 2017.

Murder. Fulton Superior Court. Before Judge Campbell.

---

[10] We also issue another cautionary note to the State, as well as all parties appearing before this Court. As is its practice in murder cases, the Attorney General filed an appellee's brief on behalf of the State. The Attorney General's initial brief consisted of 40 pages of argument, but only addressed three of the appellant's eleven enumerations of error, stating that the Attorney General adopted the brief of the District Attorney as to the remaining enumerations of error. But the brief also stated the Attorney General would file a supplemental brief addressing these remaining issues. The supplemental brief that was filed contained 19 additional pages of argument, for a total of 59 pages. As set forth in Supreme Court Rule 20, the parties' briefs in all non-death penalty criminal cases are limited to 50 pages except upon written request filed and authorized in advance of filing a brief that exceeds the limit. Rule 24 permits the filing of supplemental briefs but states that a supplemental brief that serves only to circumvent the page limits of Rule 20 will not be considered. Here, the Attorney General's supplemental brief was filed for that express purpose. We caution all appellate parties to comply with this Court's rules.

Akil K. Secret, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Lori L. Canfield, Kevin C. Armstrong, Lyndsey H. Rudder, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.