302 Ga. 19
FINAL COPY

S17A0718.  ROSCOE v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Tyshawn Roscoe was found guilty of malice murder and various other offenses in connection with the shooting death of John Douglas.[1] On appeal, Roscoe contends, among other things, that the evidence

---

[1] On March 23, 2007, Roscoe was indicted for malice murder, felony murder predicated on aggravated assault, two counts of aggravated assault with a deadly weapon, two counts of possession of a firearm during the commission of a felony, three counts of possession of a firearm by a convicted felon, hijacking a motor vehicle, misdemeanor carrying a concealed weapon, and misdemeanor obstruction. Roscoe's initial trial, which began on April 27, 2009, ended in a mistrial.  The trial court also granted Roscoe's plea in bar on April 29, 2009, but later granted the State's motion for reconsideration on the issue, clearing the way for a new trial. This Court affirmed the trial court's ruling on the State's motion for reconsideration in Roscoe v. State, 286 Ga. 325 (687 SE2d 455) (2009), and Roscoe was retried on April 27-29, 2010. Roscoe was found guilty on all counts. The three counts of possession of a firearm by a convicted felon were bifurcated, and Roscoe was found guilty on those specific counts in a separate proceeding. Roscoe was sentenced to life imprisonment for malice murder, twenty consecutive years for hijacking a vehicle, five consecutive years for each count of possession of a firearm during the commission of a felony, five years for each count of possession of a firearm by a convicted felon (two counts to run concurrent with the murder count and one count to run consecutive to the hijacking count), and twelve months on each misdemeanor (to run concurrent with each other and with the murder sentence).

presented at trial was insufficient to support the verdict and that the trial court erred in granting the State's motion in limine to exclude certain evidence. We affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on September 30, 2006, Roderick Robinson was at his auto repair shop in Fulton County performing repairs on a white 1999 Dodge Ram truck with an auto dealer tag on it. The repair shop was adjacent to a BNS Auto Sales ("BNS") store, where the truck was for sale, and the truck had just arrived at the repair shop a few days prior. Robinson also assisted customers who were looking to purchase cars at BNS. Roscoe inquired about the truck, and Robinson took him on a test drive. During the test drive, Roscoe pulled out a gun and ordered Robinson out of the truck. Robinson complied, and Roscoe drove away. Robinson told the owner of BNS about the incident, and the owner informed

---

The felony murder count was vacated by operation of law, Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the remaining counts were merged for sentencing purposes. Roscoe filed a motion for new trial on May 13, 2010, which he amended on July 29, 2014. Following a hearing, the motion was denied on April 15, 2016. Roscoe filed a timely notice of appeal, and, after the payment of costs, his appeal was docketed to the April 2017 term of this Court and submitted for decision on the briefs.

police. Robinson later identified Roscoe in a police lineup and at trial as the man who had forced him out of the truck at gunpoint.

On the morning of October 5, 2006, several gunshots rang out at the Regency Park Apartments, which was also in Fulton County. Douglas had just been shot multiple times and killed in front of one of the apartments. Jordan Dial was walking toward the apartments at the time, and he heard a gunshot followed by screeching tires. Dial saw a white truck pull out of the apartment complex and speed away with two men inside. Dial had seen that same white truck with a dealer tag on it at the apartments the night before the shooting, and he recognized Roscoe as the person who had opened the door of the truck to put something inside of it or take something out of it that night.

On October 11, 2006, police went to the Regency Park Apartments, where they found Roscoe standing between two buildings. As they approached him, Roscoe started to walk away. One of the police officers, Detective Israel, identified himself and ordered Roscoe to stop. Instead, Roscoe reached under his shirt and began to run. A foot chase ensued, and, at one point, Detective Israel noticed that Roscoe was no longer running with his arm under his shirt. After losing sight of Roscoe, Detective Israel retraced Roscoe's steps and found

3

a firearm in the center of the path. The firearm was dry despite a heavy rain a few hours before. Subsequent testing of the firearm and the bullets recovered from Douglas' body revealed that the bullets had been fired from this gun, and later testimony from Robinson revealed that this gun looked similar to the one used by Roscoe to force him from the white truck on September 30, 2006. Roscoe's fingerprints and palm prints were also found on the 1999 white Dodge Ram truck. Police continued to search for Roscoe in the apartment complex, and they eventually saw him emerge from behind a building. Police caught up to Roscoe, where they were eventually able to subdue him after Roscoe reached for Detective Israel's firearm.

This evidence was sufficient to enable the jury to find Roscoe guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Roscoe claims that the trial court abused its discretion by granting the State's motion in limine to exclude hearsay testimony allegedly showing that someone other than Roscoe had murdered Douglas. Specifically, Roscoe contends that the trial court should have allowed his roommate, Harold Bird, to testify that, while Bird was incarcerated, an inmate named Douglas Graves

told Bird that Graves and a man named Arthur Moore were the ones who actually committed the murder. We disagree.

In general, hearsay "declarations to third persons against the declarant's penal interest, to the effect that the declarant, and not the accused, was the actual perpetrator of the offense, are not admissible in favor of the accused at his trial." (Citations omitted. ) Timberlake v. State, 246 Ga. 488, 492 (1) (271 SE2d 792) (1980).[2] Indeed, "if such admissions were allowed as evidence upon the trial of the accused, a person could subvert the ends of justice by admitting the crime to others and then absenting himself." Id. However, "the hearsay rule may not be applied mechanistically to defeat the ends of justice when the rejected testimony b[ears] persuasive assurances of trustworthiness and [i]s critical to (the) defense." Grell v. State, 291 Ga. 615, 618 (2) (732 SE2d 741) (2012), quoting Chambers v. Mississippi, 410 U. S. 284, 302 (93 SCt 1038, 35 LE2d 297) (1973). Such evidence "may be admitted in the guilt-innocence phase under exceptional circumstances that show a considerable guaranty of the hearsay declarant's trustworthiness. The trial court must determine whether the

---

[2] This case was tried under the old Evidence Code. Statements against interest are addressed in the new Evidence Code in OCGA § 24-8-804 (b) (3).

5

value and reliability of the tendered hearsay evidence outweigh the harm resulting from a violation of the evidentiary rule." (Citation and punctuation omitted.) Brown v. State, 288 Ga. 902, 906 (4) (708 SE2d 294) (2011).

Here, we find no abuse of discretion in the trial court's decision to exclude Bird's testimony. During his proffer to the trial court, Rosoce claimed that Bird would testify that Graves told Bird that he and Moore had committed the murder. However, as the State pointed out, when Graves was interviewed by police, Graves denied that he had anything to do with Douglas' murder and he further denied ever making any statement to Bird admitting to the murder. The police also conducted an independent investigation of both Graves and Moore based on Bird's allegations and found no relevant evidence in the men's apartments to connect them to Douglas' murder. Nor did they find any fingerprint evidence to connect the men to the white truck used as the getaway vehicle. Thus, the only evidence directly connecting Graves and Moore to the murder was the uncorroborated hearsay statement of Roscoe's roommate that was based on statements that Graves, himself, denied ever making. We find no error in the trial court's decision to exclude this proffered testimony. See, e.g., Grell, supra. See also McCray v. State, 301 Ga. 241, 249 (6) (799 SE2d 206)

6

(2017) ("This Court reviews a trial court's decision to admit or refuse to admit evidence for abuse of discretion"); Thompson v. State, 277 Ga. App. 323, 324 (2) (626 SE2d 825) (2006) ("A trial court's ruling on a motion in limine is reviewed for abuse of discretion") (citation omitted).

3. Roscoe asserts that the trial court erred in denying his motion for a mistrial after Detective Israel testified that he went to the apartment complex to look for Roscoe based on an anonymous caller who indicated that a person who was seen the morning of the murder was standing between some buildings in the complex. However, the trial court sustained Roscoe's objection to this testimony as impermissible hearsay and further gave a comprehensive curative instruction to the jury to inform them that the testimony should not be considered. The jurors are presumed to have followed this instruction (see Johns v. State, 274 Ga. 23, 25 (3) (549 SE2d 68) (2001)), and, when the trial judge specifically asked if any of the jurors could not disregard the offending testimony, none of the jurors indicated that they could not ignore it. See, e.g., Alatise v. State, 291 Ga. 428 (5) (728 SE2d 592) (2012). We find no abuse of discretion in the trial court's decision to give a curative instruction rather than grant Roscoe's motion for a mistrial. Id.

7

4. Roscoe contends that the trial court erred by allowing the State's medical examiner, Dr. Sullivan, to testify that the bullets recovered from Douglas' body were actually sent to the State's crime lab for analysis, because Dr. Sullivan was not the doctor who performed the victim's autopsy and therefore had no firsthand knowledge of whether the bullets recovered from the body were actually sent to the crime lab. He claims that, because Dr. Sullivan could not testify about the actual sending of the bullets to the crime lab, the State could not establish a sufficient chain of custody for the bullets removed from Douglas' body. However, Roscoe's argument is misplaced. Indeed, independent of Dr. Sullivan's testimony, the bullets themselves were identified by the State's ballistics expert, who verified that he actually received the bullets from the medical examiner's office, that he tested the bullets that he received, and that the tests showed that the bullets had been fired from the same gun that police recovered on the night that they arrested Roscoe. We find no error. See Kempson v. State, 278 Ga. 285, 286-287 (3) (602 SE2d 587) (2004).

Judgment affirmed. All the Justices concur.

Decided September 13, 2017.

Murder. Fulton Superior Court. Before Judge Baxter.

Cynthia W. Harrison, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Paige Reese Whitaker, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth M. Haase, Assistant Attorney General, for appellee.