313 Ga. 10
FINAL COPY

S21A1119. MYERS v. THE STATE.

ELLINGTON, Justice.

A jury found Corey Myers guilty of felony murder and related charges in the shooting death of Emanuel "Seymour" Jones and of burglary and trespass in a separate incident.[1] On appeal, Myers contends that "[t]he verdict is contrary to the principles of justice and equity and against the weight and sufficiency of the evidence"

---

[1] The shooting occurred on July 9, 2017, and the burglary occurred on August 10, 2017. A Fulton County grand jury returned an indictment against Myers for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on possession of a firearm by a convicted felon (Count 3), aggravated assault (Count 4), possession of a firearm during the commission of a felony (Count 5), possession of a firearm by a convicted felon (Count 6), burglary in the first degree (Count 7), and criminal trespass (Count 8). After a December 2019 trial, a jury found Myers not guilty on Count 1 and guilty on all remaining counts. The trial court sentenced Myers to life in prison on Count 2 and to five years in prison on Count 5, to run consecutively, for a total of life plus five years. The trial court entered concurrent sentences on Counts 6, 7, and 8. Count 3 was vacated by operation of law, and Count 4 merged with Count 2 for sentencing purposes. Myers filed a timely motion for new trial, which he amended on October 27, 2020. The trial court conducted a hearing on the motion on February 5, 2021, and denied the motion on March 8, 2021. Myers filed a timely notice of appeal. The case was docketed in this Court to the August 2021 term and submitted for a decision on the briefs.

and that the prosecutor improperly argued that a shell casing found near the victim's body was not relevant to the circumstances of the shooting. He also contends that his decision to plead not guilty was not knowing and voluntary because, contrary to the State's representation before trial, he was not actually facing a potential mandatory life without parole sentence if he went to trial. For the reasons explained below, we affirm.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed the following. In July 2017, Jones was living in the Sierra Ridge apartment complex in Atlanta in an apartment that lacked running water and a functioning bathroom. A heavily traveled path that ran behind the apartment connected the complex to nearby stores. On July 9, Kenneth Clark, a Sierra Ridge resident who knew Jones, was walking down the path when he saw Jones, who was wearing a red shirt, lying in the path, bleeding and unable to speak. Clark called 911. Before Jones could be taken to the hospital, he died from a single gunshot wound to his thigh that fractured his femur and lacerated major blood vessels.

In a statement to investigating officers, Christopher Wilson, a long-time friend of both Jones and Myers, stated that he saw Myers at the complex not long before Jones was shot. Myers complained to Wilson about the foul odor that persistently hung around the path where Jones sometimes emptied buckets of urine. According to Wilson, Myers said that he had tried to fight Jones earlier that day, but someone prevented the fight, and Myers said, "When I see Seymour, I'm going to get him." About 30 minutes later, Wilson encountered Jones again, and the two had a short conversation before Jones left to take a phone call. About five minutes later, Wilson heard a gunshot and then saw Myers running away, holding a black gun that Wilson could identify only as "look[ing] like a Glock .40 or something like that." Wilson testified that it was not unusual to hear gunshots in the Sierra Ridge apartment complex and for people to carry guns, and that Myers was not the only person running in the area after the shot was fired. At trial, Wilson identified Myers as the person who said on the day of the shooting that he was "going to get" Jones for pouring urine by the path and

3

whom Wilson saw run past while holding a handgun about 30 minutes after that conversation and just after Wilson heard a gunshot.

Kadejah Stafford testified that she was visiting someone at the apartment complex that afternoon and heard two men arguing near the back of the apartments about somebody pouring urine on a porch. Then she heard a gunshot, and, before she ran for safety, she looked in the direction of the shot and saw a man in a red shirt fall to the ground.

A bullet was recovered from Jones's body during an autopsy. A firearms examiner testified that, due to post-firing damage, the caliber of the bullet could not be precisely determined but it was consistent with being fired from a Smith & Wesson .38 Special revolver or a Smith & Wesson .40 caliber pistol.

On August 10, 2017, after officers had obtained a warrant to arrest Myers for Jones's murder and while Myers was still at large, officers responded to a burglary in progress at 1865 Lakewood Terrace Drive in Atlanta. A neighbor called 911 and reported that

the usually padlocked front door of the house appeared to have been kicked in. When officers arrived, the front door was slightly open. The officers yelled for the occupants of the house to come outside. While officers detained three men who exited through the front door, the officers heard a window break. One officer went to investigate, found a broken window on the side of the house, and ordered whomever was still in the house to come outside. Myers came out of the house through the front door. His arm was bleeding from where he cut himself while trying to escape through the kitchen window. At trial, the homeowner testified that Myers did not have permission to be in the house and that the damage to the front door and window amounted to about $400.

1. Myers contends that the verdicts are contrary to the principles of justice and equity and against the weight and sufficiency of the evidence, pointing to certain inconsistencies and gaps in the circumstantial evidence that he was the shooter. He argues that, in ruling on his motion for a new trial on the general grounds, the trial court failed to fulfill its duty, sitting as the

5

"thirteenth juror," to weigh the evidence and consider the credibility of the witnesses, and instead applied the standard for evaluating the sufficiency of the evidence under *Jackson v. Virginia,* 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See *Hinton v. State*, 312 Ga. 258, 262 (1) (c) (862 SE2d 320) (2021) (The "general grounds" for a new trial require the trial judge to exercise a "broad discretion to sit as a 'thirteenth juror'" and to "consider some of the things that [she] cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence." (citation and punctuation omitted)); *Holmes v. State*, 306 Ga. 524, 528 (2) (832 SE2d 392) (2019) (A trial court fails to exercise its discretion as the "thirteenth juror" if it reviews a motion for new trial on the general grounds only for legal sufficiency of the evidence.).

"[T]he decision to grant or refuse to grant a new trial on the general grounds is vested solely in the *trial* court." *Bundel v. State*, 308 Ga. 317, 318 (1) (840 SE2d 349) (2020) (emphasis in original). Therefore, "[w]hen a defendant appeals the trial court's denial of a

6

motion for new trial, an *appellate* court does not review the merits of the general grounds." Id. (emphasis in original). Instead, unless the record shows that the trial court failed to exercise its discretion under the general-grounds standard, an appellate court "simply review[s] the case under the familiar standard of *Jackson v. Virginia* . . . to determine whether the evidence, viewed in the light most favorable to the convictions, was sufficient to support them." Id.[2] In this case, the evidence, though largely circumstantial, was sufficient under that standard.

Moreover, nothing in the record supports Myers's claim that the trial court failed to exercise its discretion as the thirteenth juror.

---

[2] See *Casey v. State*, 310 Ga. 421, 425 (2) (851 SE2d 550) (2020) (The general grounds in a timely motion for new trial and a claim of error that there was insufficient evidence to support a conviction under *Jackson* "are two distinct legal arguments that require the trial court to apply distinct legal standards." Where "the record reflect[ed] that the trial court reviewed the motion for new trial only for legal sufficiency of the evidence, the trial court . . . failed to exercise its discretion under the general grounds," and this Court vacated the denial of the motion for new trial and remanded the case so that the trial court could "apply the proper standard in exercising its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21." (citation, punctuation and emphasis omitted)); *Wilkerson v. State*, 307 Ga. 574, 575 (837 SE2d 300) (2019) ("[A]bsent some indication in the record to the contrary, we generally presume that trial judges understand [the] distinction" between the legal standards applicable to an argument under the general grounds and to an argument under *Jackson*.).

In the order denying Myers's motion for a new trial, the trial court noted that Myers asked the court to reverse his convictions under the discretion given to the court by OCGA §§ 5-5-20 and 5-5-21,[3] asserting that the verdict was strongly against the weight of the evidence and that the verdict was contrary to the principles of justice and equity and the weight and sufficiency of the evidence. The court found that "this is not an exceptional case in which the evidence preponderates heavily against the verdict" and declined to grant a new trial on the basis of the general grounds. Thus, the record does not support Myers's argument that the trial court failed to fulfill its duty in ruling on the general grounds to weigh the evidence and consider the credibility of the witnesses. See *Butts v. State*, 297 Ga. 766, 772 (3) (778 SE2d 205) (2015). Because the evidence was sufficient under the *Jackson v. Virginia* standard and the record

---

[3] See OCGA §§ 5-5-20 ("In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury."); 5-5-21 ("The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding.").

shows that the trial court exercised its discretion as the thirteenth juror, this claim of error fails. See *Dixon v. State*, 309 Ga. 28, 37-38 (4) (843 SE2d 806) (2020); *Smith v. State*, 300 Ga. 532, 534 (1) (796 SE2d 671) (2017).

2. Myers contends that, in closing argument, the prosecutor improperly asserted an important fact in a manner that was contrary to the evidence, specifically by asserting that a shell casing found near Jones's body was "not really relevant" to the circumstances of Jones's murder. The record shows that Myers did not object to this argument at trial. In the appeal of a "non-capital case, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." *McCray v. State*, 301 Ga. 241, 250 (9) (799 SE2d 206) (2017) (citation and punctuation omitted). Because Myers failed to preserve any error, we do not consider his argument on the merits. See *Moon v. State*, 311 Ga. 421, 426 (4) (858 SE2d 18) (2021) (This Court "do[es] not review unpreserved challenges to closing arguments in non-death penalty cases, even for plain error.").

3. Myers contends that he was entitled to a clear understanding of the possible sentence he faced prior to making the decision to go to trial and that the trial court erred by allowing the case to be tried because he did not have such an understanding.[4] Specifically, Myers argues that, at the time of making the decision whether to go to trial or to accept the State's plea offer, he did not understand that, because he had only two prior felony convictions, not three as the State asserted, the recidivist statute, OCGA § 17-10-7, did not require the trial court to sentence him to life in prison without the possibility of parole if he were to be convicted of murder.[5] Myers argues that the State's misrepresentation of the potential recidivist sentence "deprived him of a knowing and willful decision on the matter" of whether to accept the State's plea offer.[6]

---

[4] Myers makes no claim that his trial counsel provided ineffective assistance in this, or any other, respect.

[5] See OCGA § 17-10-7 (a) (for second or subsequent felony convictions, the maximum sentence is required), (c) (for fourth or subsequent felony convictions, the maximum sentence without parole eligibility is required). The trial court sentenced Myers as a recidivist under OCGA § 17-10-7 (a) only and did not sentence Myers to life without parole.

[6] Before trial, the State informed the trial court that the plea offer was for 25 years in prison.

A defendant who enters a guilty plea "simultaneously waives several constitutional rights," including the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. *McCarthy v. United States*, 394 U. S. 459, 466 (I) (89 SCt 1166, 22 LE2d 418) (1969).

> For this waiver to be valid under the Due Process Clause, it must be an intentional relinquishment or abandonment of a known right or privilege. Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.

(Citations, punctuation and footnote omitted.) Id.[7]

We are aware of no authority, however, that a trial court is

---

[7] See also *McClain v. State*, 311 Ga. 514, 515 (858 SE2d 501) (2021) (The State may meet its burden of showing that the defendant entered a guilty plea knowingly, intelligently, and voluntarily "by showing on the record of the guilty plea hearing that the defendant understood the rights being waived and possible consequences of the plea or by pointing to extrinsic evidence affirmatively showing that the plea was voluntary and knowing. In evaluating whether a defendant's plea was valid, the trial court should consider all of the relevant circumstances surrounding the plea." (citation and punctuation omitted)).

required as a matter of course to ensure that a defendant's decision to exercise his right to a jury trial by pleading not guilty is knowing, intelligent, and voluntary under the same standard as applies to the acceptance of a guilty plea, and Myers cites no such authority. A defendant's not guilty plea, in contrast to a guilty plea, does not waive constitutionally protected rights; rather, it *invokes* the right to a jury trial and the right of confrontation. Cf. *United States v. Jackson*, 390 U. S. 570, 584 (II) (88 SCt 1209, 20 LE2d 138) (1968) (A criminal defendant has no absolute right to have his guilty plea accepted by the trial court.); *Lord v. State*, 304 Ga. 532, 539 (6) (820 SE2d 16) (2018) ("[T]here is no constitutional right to plea bargain." (citation and punctuation omitted)); *Sanders v. State*, 280 Ga. 780, 782 (2) (631 SE2d 344) (2006) ("[A] defendant has no constitutional right to enter a guilty plea."). Myers has not shown any error in the trial court's acceptance of his not guilty plea.

*Judgment affirmed. All the Justices concur.*

Decided December 14, 2021.

Murder. Fulton Superior Court. Before Judge Millender.

*Davis Hewitt Law Firm, W. Davis Hewitt*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Ruth M. Pawlak, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, William C. Enfinger, Assistant Attorney General*, for appellee.